## Turner *versus* The Commonwealth.

1. The Court of "Oyer and Terminer" is a sufficient description of a court having jurisdiction of homicide cases, and the omission of the words "and General Gaol Delivery," is of no legal significance and not a ground for reversal.

2. The Act of April 9th 1874, providing for the election of an additional law judge in the Twenty-fifth Judicial District, is constitutional.

3. In a trial for murder evidence of the prisoner's illicit intercourse with the deceased is admissible, if such criminal conduct becomes in any way a link in the chain of circumstances which connects the prisoner with the murder.

4. It is erroneous to submit the general character of witnesses to a jury without previous evidence touching such character.

5. It was complained that the court permitted the jury to find a verdict against the prisoner upon a degree of proof less than that required by law in criminal cases. *Held*, that the instructions of the court, as herein contained, were all that the prisoner had a right to require.

6. The court instructed the jury that if the defendant proved an alibi it constituted a perfect defence, but if not proved and they did not think it had been proved the attempt to manufacture evidence was a circumstance which always bore against the person making it; that no innocent person is driven to manufacture evidence. *Held* (reversing the court below), that this instruction is manifestly wrong, inasmuch as the jury are told that the defendant having undertaken to defend himself on the ground of alibi, must produce evidence sufficient to work his acquittal, or if not his failure is evidence of guilt. *Held, further*, that were the defendant detected in an attempt to corrupt witnesses or to manufacture evidence it would certainly weigh heavily against him, but his mere failure to prove a given part of his defence is no evidence of such attempt and ought not to have been submitted as such to the jury.

7. Where the case of the Commonwealth rests upon positive and undoubted proofs, it seems that like evidence of an alibi should be required, but where the case rests wholly upon circumstantial evidence, the evidence of the alibi, though not clear, should be submitted to the jury as matter of defence.

8. *It seems* that the burthen of proof never shifts, but rests on the prosecution throughout, and if, from all the evidence, a reasonable doubt of the defendant's guilt is raised, there should be an acquittal.

January 8th and 9th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error and certiorari to the Court of Oyer and Terminer and General Jail Delivery of *Clearfield county:* Of May Term 1878, Nos. 47 and 48. Certified from the Middle District.

Indictment of Martin V. Turner for the murder of Maria J. Waple. Defendant pleaded "Not guilty."

[Turner v. Commonwealth.]

The indictment was drawn as follows :—

" In the Court of Oyer and Terminer for the county of Clearfield, January Session 1877, County of Clearfield ss. The Grand Inquest of the Commonwealth of Pennsylvania, inquiring for the county of Clearfield, upon their respective oaths and affirmations, do present, That Martin V. Turner, late of the said county of Clearfield, on the third day of November, in the year of our Lord one thousand eight hundred and seventy-six, at the county aforesaid, and within the jurisdiction of this court, with force and arms, &c., in and upon the body of one Maria J. Waple, in the peace of God and the said Commonwealth, then and there being, then and there feloniously, wilfully, and of his malice aforethought, did make an assault, and her, the said Maria J. Waple, then and there feloniously, wilfully, of his malice aforethought, did kill and murder, contrary to the form of the Act of Assembly," &c.

On behalf of the prisoner it was alleged that this indictment was fatally defective, inasmuch as it did not aver that the deceased was *living* when assaulted by the prisoner ; and for the additional reason that it did not state the station, title or degree of the prisoner. 25th and 26th assignments of error.

The indictment when sent to the grand jury was endorsed " True bill," and the prisoner alleged that it could not be sustained, for it had not been found a true bill by the grand jury, the endorsement having been made by the District-Attorney before reaching them. 24th assignment.

At the trial, before Orvis, Additional Law Judge, it appeared that the deceased, Maria J. Waple, lived at Wallaceton, in Clearfield county, and was the divorced wife of Thomas J. Waple. About one o'clock on the 3d of November 1876, she started to visit her sister-in-law, Mrs. Jared Waple, who lived about two miles distant. No more was heard of her until the 8th of November, when her body was found in the woods about one hundred yards from the road leading to Jared Waple's, with one gun-shot wound in the body and another in the top of her head. Turner and the deceased had been seen at the gate of the house of the latter engaged in conversation on the day of the murder, shortly before the deceased had started for the house of her sister-in-law, and very soon after she started two shots were heard in quick succession from the direction she had taken and where her body was discovered. Turner, it was shown, left his house, a short distance from that of deceased, about one o'clock on the day of the murder. He arose from the dinner-table, went up stairs and started from his house with his gun. This gun had two barrels, one of which was rifled and the other a smooth-bore, and the wound in the body of deceased was apparently made by a rifle-ball and that in the head by buckshot. When the prisoner returned to his house in the evening both barrels of the gun were unloaded, and he remarked

[Turner *v.* Commonwealth.]

that he had been after squirrels and had had bad luck.    When the search was made, the tracks of what appeared to be a man and woman were found in the vicinity of the body, and tracks which in size corresponded with those made by the shoes of Turner were found leading in the direction of the house of one Williams, about a mile and a half distant, where Mrs. Williams testified Turner came on the afternoon of the 3d of November, and that he had a gun in his hand.

The court permitted the Commonwealth to show that from 1869 to June 1876, there had been a criminal intimacy between the prisoner and the deceased, and that these relations ceased on the latter date, when there had been a quarrel between them.

The admission of this testimony was the 1st assignment of error.

In charging the jury, the court, commenting on this testimony, said : " That for a long time—from about the year 1869 down until the summer of 1876—there was a criminal intimacy existing between the defendant and the deceased.    Now, has that fact been proven to your satisfaction?    Because, if it has not—if the evidence in the case does not show that this intimacy existed—then, of course, it must be thrown out of the case.    It cannot form a part of the facts from which you can legally, justly and appropriately infer the guilt of the defendant."    This portion of the charge constituted the ninth assignment.

The defendant called a number of witnesses to prove an alibi. There was evidence that the prisoner, after leaving the dinner-table, on the 3d of November, was engaged in making repairs to the roof of a house, until about half-past one o'clock; and the freight agent at the railroad office testified that the prisoner came to the station, between two and three o'clock, on the day of the murder, and assisted him in checking manifests for fifteen or twenty minutes; and, on cross-examination, the same witness said that Turner had several times called witness' attention    to    this    fact. Other evidence in relation to the alibi will be found in the opinion of this court, in their discussion of the charge of the court below, with reference to the attempt of the prisoner to manufacture evidence.

The defendant offered to prove, by the constable who arrested him, that, on the night of November 11th 1876, he found him, about eight o'clock, at his father's house, in bed; that he told him he was there to arrest him for the murder of the deceased, and that defendant replied : " All right; I will go with you; I am innocent;" that he did not ask for a warrant, but accompanied the officer peaceably to the jail at Clearfield : this being offered to show absence of guilty fear, and that his conduct was consistent with that of innocence.

The admission of this evidence, under objection, was the second assignment.

[Turner *v.* Commonwealth.]

To show the relations of the deceased toward Waple, her divorced husband, and to repel the presumption sought to be raised by the Commonwealth that the prisoner was the only person who had any jealousy or a grudge against the deceased, the defendant offered evidence to show that Waple, the husband of the deceased, returned from the penitentiary in May 1875, and came to the house owned and occupied by deceased; that, although divorced, they lived together as man and wife until September of that year, when they separated by reason of a quarrel between them; that Waple, the husband, then went to Woodland, a distance of some three miles from Wallaceton; that he was arrested for non-payment of the costs in the divorce proceedings, and confined in jail at Clearfield; that, while there, some time in the latter part of October 1876, he requested deceased to bail him out of jail, and she refused; that he got out of prison, and was seen in the house of Mrs. Waple, at Wallaceton, on Friday night of November 3d, and on the Saturday night following, at Wallaceton early on Sunday, and beyond Wallaceton before daylight Saturday morning.

David Quigley, one of defendant's witnesses, having testified in chief that Waple was in the house on the Monday following the murder, and came out and asked him and one Strickland in, the Commonwealth proposed to ask witness, on cross-examination, for what Waple had asked them in, what they did when they went into the house, and what was there said and done. This testimony was admitted, under objection, which was the third assignment. Quigley testified that Waple told him he was searching for traces of the murder.

The Commonwealth offered to prove, in rebuttal, the whereabouts of Waple, from the morning of Friday, November 3d 1876, until the evening of that day, where he was that night, his business at Wallaceton on Saturday morning, the 4th inst., and his business at Wallaceton on Sunday morning, the 5th inst.; also to show that at Bradford church he received word first that Mrs. Waple was missing, this being the evening that he was found, as testified to by defendant's witnesses, in the house of deceased, looking for some trace of her whereabouts; also to show that, on that evening, November 6th, he went to John Rice's house for the key to Mrs. Waple's house, John Rice being her next neighbor.

The admission of this evidence constituted the fifth assignment.

The following points were submitted by defendant, to which are appended the answers of the court:—

1. That the jury must be satisfied beyond a reasonable doubt that a murder was committed, and that the prisoner was the guilty agent therein, or they must render a verdict of acquittal.

Ans. "That is undoubtedly true, and we cheerfully affirm the point. You must be satisfied beyond a reasonable doubt: first, that the murder was committed; second, that this defendant was

[Turner *v.* Commonwealth.] .

the guilty agent, or you would not be justified in finding a verdict of guilty. What is a reasonable doubt ? Not a mere figment of the intellect, not the shadow of the substance of a theory, but a substantial, reasonable doubt; such a doubt as would make an ordinarily prudent man hesitate before coming to a conclusion. If such a doubt exists, of course it must work the acquittal of the prisoner." Nineteenth assignment.

3. That the several circumstances relied upon by the Commonwealth to convict the prisoner, must each be proved to be true beyond all reasonable doubt, and if any of them be not so proved, it is the duty of the jury to disregard such circumstances in making up their verdict.

Ans. "We affirm this point with this remark : That those circumstances relied upon by the Commonwealth must be essential circumstances—necessary circumstances to prove guilt, * * * every fact and circumstance essential to make out the prisoner's guilt must be proved." Twentieth assignment..

4. That the jury must examine the facts proved with impartial minds, giving them their weight, as well of favor as of disfavor to the prisoner, and they cannot convict him unless the conclusion of his guilt flows naturally from these facts, and is consistent with all of them ; but if there be any of the facts absolutely inconsistent with his guilt, they must acquit him.

Ans. " We affirm this point also, with the remark as before, that it must apply to essential facts proven in the case. If there is a fact proved which is inconsistent with the defendant's guilt, it shows that the theory of his guilt cannot be true; but that some witness testified to something which is inconsistent with his guilt would not work his acquital, unless you are satisfied the fact alleged is true. If any fact proved in the case, that is established by satisfactory evidence, is inconsistent, and totally incompatible with the theory of his guilt, of course it must work his acquittal." Eighteenth assignment.

5. That the jury must acquit the prisoner unless the evidence of the facts proved are absolutely incompatible with his innocence, and. cannot be explained upon any other reasonable theory than that of his guilt; and if they find that the crime could have been committed by another, and the facts proved still be true, they must acquit the prisoner.

Ans. " We told you in our charge that the facts proved must be such as to exclude every reasonable ·hypothesis but that of the prisoner's guilt. We affirm this point."

In their general charge, the court, inter alia, said :—

[" There are persons who think that circumstantial evidence does not prove anything; it is a common thing to hear persons who, after hearing the trial of a case depending on circumstantial evidence, use an expression like this : ' I have no doubt the fellow is guilty,

[Turner *v.* Commonwealth.]

but the Commonwealth could not prove it.' They convict themselves of error in the very expression they make use of. For if the evidence satisfied them that the man is guilty, it is proved, it is what the law requires. That is what the law requires of all evidence; it must be of such a character as to convince the intellect and conscience of the jury that the party is guilty; then it amounts to proof, and not till then."]

["Now you are to consider this case in all its bearings. You are first to take the case of the Commonwealth and see if they have proved, by clear and satisfactory evidence, the facts from which they ask you to infer the defendant's guilt. If the facts themselves are not proved, no legal inference can be drawn from them. If they are proved, then you must determine as to the materiality of these facts; whether all the facts can be true and yet the defendant be innocent. If they are not of a conclusive character, then, of course, it does not necessarily follow that the defendant is guilty. He may be guilty and he may not."]

["It is alleged on the part of the Commonwealth that the defendant was away from home, and in possession of an instrument of the kind which must have been used in committing this act. Now, has that fact been proved? If the evidence of the Commonwealth leaves it in doubt when considered alone, or if the evidence of the defendant shows that it could not be true, then it is not a fact in this case. But if it is proved, satisfactorily proved, proven to your satisfaction, so you believe it, then it is a fact proven in this case. It is, however, to be considered in determining whether that allegation is proven to exist; you must consider and weigh all the testimony bearing upon it, whether that testimony comes from the Commonwealth's witnesses or the witnesses for the defendant."]

["It is alleged in the next place by the Commonwealth that there were tracks, coming from near where the body was found, leading through the woods for nearly two miles, and coming to a place where the prisoner was upon that day; that these tracks were the tracks of the prisoner; that they correspond in size, in length, in width and with peculiarities that are shown to have existed in his boots. Now is that a fact proved in this case? Does the evidence satisfy your minds that that is true?"]

["The fact of the defendant's guilt, it is incumbent upon the Commonwealth to prove by affirmative evidence. The defence have a right simply to sit still and say, 'You have not proved your allegations.' They question the validity of the proof; the satisfactory nature of the evidence; the credibility of the witnesses; the truth of the evidence. If they have satisfied your minds that there are weak points in the case of the Commonwealth; that they have not proved any material fact, or if the facts proved are not of a conclusive character, it will be your duty to acquit the defendant."]

[Turner *v.* Commonwealth.]

["If the evidence does clearly point to him as the guilty agent, then no consideration whatever should prevent you from convicting him. If the evidence does so satisfy your minds and consciences that he is guilty, the fact that he belongs to one family or another; that he is rich or poor; that he may have rich relations, or he may not have them; that he may have a father or mother, sisters or brother, to whom his conviction would be a terrible blow, must not weigh with you, if the evidence shows that he is guilty. The fact that the public want him convicted, if it is true that they do, should not weigh one feather's weight to convict him, if the evidence does not satisfy your minds and consciences that he is guilty."]

The foregoing portions of the charge constituted, respectively, the seventh, eighth, tenth, eleventh, thirteenth and twenty-first assignments.

The court again said:—

"It is alleged on the part of the Commonwealth that the defendant made efforts to manufacture testimony that was not true; that he attempted to get witnesses to swear to his presence at times and places where he was not; that he called attention to a time and place where he said he was and afterwards denied it. Now, are these facts sustained by the proof? If it was proved that this defendant did so attempt to manufacture evidence that was false, it is a fact which you must consider." Twelfth assignment.

Again:—

"The next branch of the defence is of a different character, and of a more affirmative character. That is what is called in law an alibi. You should examine very carefully all the evidence bearing upon that question. An alibi is a perfect defence, when it is fully, clearly and satisfactorily established, but the burden is upon the person asserting it to establish it. If a defendant offers to show an alibi, the burden is upon him; there he becomes the affirmant; he becomes the actor, and the law requires him to prove to your satisfaction that his allegation of being somewhere else is true. This, from a negative defence, now becomes an affirmative one." Fourteenth assignment.

Again:—

"You must bear in mind all of those facts by which the credibility of the witnesses can be determined, to ascertain whether the proof of the alibi, or of the prisoner being elsewhere at the time the murder was committed, is made out. It is for you to say whether that fact is established. If it is sustained or satisfactorily proven, of course he cannot have committed the murder. Whether or not it is established, is of course for you to determine. There is a considerable conflict or discrepancy in the evidence bearing upon the facts, but it does not necessarily follow that the persons who have

[Turner v. Commonwealth.]

testified to these discordant facts have necessarily perjured themselves. It is your duty to reconcile these statements without imputing perjury, if the discrepancies in the testimony can be reconciled upon the hypothesis of mistake. Judge of the different witnesses whether they tell the truth or not, if their statements can all be reconciled upon any reasonable hypothesis of truthfulness, and let the testimony of all the witnesses stand. You must determine with regard to each of these witnesses in your own examination, which was most liable to be mistaken, what circumstances they show which would enable them seemingly to fix the time; this applies as well to days as hours or parts of days. * * * You must determine what is true. In order to do that you must scrutinize the evidence; you must consider the witnesses, who they are, what their character is in the community, whether their character for veracity has been assailed." Fifteenth assignment.

Again :—

"Then you must determine from all this, guided by these rules, whether an alibi has been proved or not. If proved, it constitutes a complete defence; if not proved, and if you think it has not, the attempt to manufacture evidence is a circumstance which always bears against the person. No innocent person is driven to manufacture evidence. If you believe that this defendant has attempted to manufacture evidence that is not true—has attempted to prove that he was at a place and time where he was not, then that is a circumstance against him. If his allegation is true—if his allegation is supported by truthful evidence, reliable evidence, then it goes to his defence." Sixteenth assignment.

The jury rendered a verdict of murder in the first degree, and his honor, Judge Orvis, sentenced the prisoner to be hung. This writ was then taken by him, and, among others, he assigned the errors noted above, together with the following :—

Twenty-second assignment. That the indictment was found and the defendant tried and sentenced in a court unknown to the Constitution and laws of the Commonwealth, as the record named the court as the "Oyer and Terminer" and omitted "and General Gaol Delivery."

Twenty-third assignment. That the defendant was tried and sentenced by an *additional law judge*, who has no constitutional power to try pleas of murder in a "double district."

*William A. Wallace* (with whom was *D. L. Krebs*), for prisoner.—1st and 9th errors: Proof of illicit connection is no proof of motive. In absence of threats, jealousy, possession of secrets or a quarrel, it could only tend to prejudice the jury and permits them to imagine a motive. It is proof of an independent crime. There must be a connection between the two in the mind of the criminal: Shaffner v. Com., 22 P. F. Smith 60; 1 Greenl. Ev. 951. Motive

[Turner *v.* Commonwealth.]

cannot be imagined. It must result from facts proved. It is contrary to nature to deduce the motive for murder from the genesis of being, in the absence of proof of threats, jealousy or quarrels. This, in effect, proved prisoner's character by acts. This is illegal: People *v.* Jones, 31 California 566; People *v.* Bennett, 49 N. Y. 147; State *v.* Lapage, 57 N. H. 245.

2d error: Prisoner's statements as part of *res gestæ* admissible: U. S. *v.* Craig, 4 Wash. C. C. Rep. 729; State *v.* Swink, 2 Dev. & Batt. 9; Kirby *v.* State, 7 Yerger 259; McClenkan *v.* McMillan, 6 Barr 367; Tompkins *v.* Saltmarsh, 14 S. & R. 281; Potts *v.* Everhart, 2 Casey 498; Cattison *v.* Cattison, 10 Harris 276.

7th error: This part of the charge substitutes the "satisfaction" of a hearer not under oath for the higher measure of conviction necessary for an oath-bound juror. We all believe facts, as men, that we would not act upon as such in a capital case. A juror must base his finding upon the legal conviction of his intellect. The judgment of a bystander might adjudge preponderance, but the presumption of innocence is to be overcome. In such cases the intellect is appealed to through the medium of lawful proof. It must be legal, not moral conviction.

8th, 10th and 13th errors: The court here imposes the onus upon the prisoner. It in substance permits the Commonwealth to prove a prima facie case and then calls upon us to answer it. The 11th error is the assumption of a vital fact and is error: Musselman *v.* Railroad Co., 2 W. N. C. 105; 32 Leg. Int. 404; Harrisburg Bank *v.* Forster, 8 Watts 304; Parker *v.* Donaldson, 6 W. & S. 132.

12th error: The words are, "No innocent person is driven to manufacture evidence." No proof of such in any part of the case. The logic is, if Turner's alibi fails he manufactures proof. Therefore Turner is guilty. Failure to prove alibi no proof of guilt: Briceland *v.* Commonwealth, 24 P. F. Smith 463; State *v.* Collins, 20 Iowa 85; Great Western Railroad Co. *v.* Morthland, 30 Ill. 457; White *v.* State, 31 Ind. 262; State *v.* Josey, 64 N. C. 56.

Fourteenth, fifteenth, sixteenth and eighteenth errors. The court erred—

1st. He has held the prisoner in his proof of alibi to a higher measure of proof than he requires of the Commonwealth upon any vital fact or upon the whole case.

2d. He has held the prisoner to the same full measure of proof as not being at Williams's, 688 rods from the scene of murder, on Friday with a gun, as to his being at Wallaceton at the moment of the murder.

3d. He has required from the prisoner full proof of his own allegation from his own side as to the alibi, and failed to give them the whole evidence to weigh and consider upon that point.

[Turner *v.* Commonwealth.]

4th. In asserting the broad proposition that the burden of proof of the alibi was on the prisoner, and that he must fully and clearly establish it.

5th. In permitting the jury to consider the character of witnesses in the community, when no attack had been made upon their character.

As to the first proposition: the measure of proof applied to the facts relied on by the Commonwealth is stated thus: "It is necessary therefore that the Commonwealth should prove fully and satisfactorily to your minds the facts themselves, from which she asks you to infer the guilt of the prisoner." The same language is repeated, except that it is to be to their satisfaction. Again, the court gives the concrete thus: "You are first to take the case of the Commonwealth and see if she has proved by clear and satisfactory evidence the facts from which she asks you to infer the defendant's guilt."

Now, we turn to the other side; as to the alibi. "If this is established clearly and satisfactorily of course it is an end of the case." Again: "An alibi is a perfect defence where it is fully and satisfactorily established." Again: "If it is sustained or satisfactorily proven, of course he cannot have committed the murder."

One conclusion or the other forces itself from this comparison, namely: either the measure of proof to which the Commonwealth was held was too low, or the proof to which the prisoner was held was too high. They are not similar in requirement, and there is error here.

This burden ought not to lie, and, as the law is now held, does not lie, on the defendant.

Neither the humanity, the reason nor the authority of the law sustains the court.

The presumption of innocence shields the prisoner. He may sit still and demand proof beyond doubt of his guilt. What reason can be given, in accord with humanity, for changing this rule and destroying this presumption, when he tries to show the physical impossibility of his presence? It is often the only refuge of innocence. The jury, under instructions, may be safely trusted with the legal scrutiny of the evidence. It is not sustained by reason. The allegation of the indictment is "he did then and there kill." This is a vital part of the proof of the Commonwealth. It is traversed by the plea of not guilty. Alibi is a defence and not a plea. It confesses nothing. It avoids nothing. It does not admit the killing either "then or there." It simply says: You must prove this charge; if you do prove it, I am not guilty for I was elsewhere. It is not an affirmative defence. It is a denial of the charge "you did there kill." There can be no such thing under the law as an affirmative defence to the gist of a crime, which will

[Turner *v.* Commonwealth.]

shift the burden of proof from the Commonwealth to the prisoner.
If alibi be such, it is an anomaly in criminal jurisprudence.    The
defences of insanity, provocation, necessity, and former acquittal
or conviction are all in excuse or justification, and each of them is
an admission of the essence of the offence—the very fact of kill-
ing.    Alibi, on the contrary, if narrowed to its lowest conception,
distinctly traverses this vital element of the crime—he did there
kill.    All of the authorities agree that the Commonwealth, upon the
whole case, must prove every essential of the crime beyond a reason-
able doubt.    They also agree that the prisoner makes no admission
of guilt by setting up an alibi.    If those be sound law, and they are
undoubtedly humane—it necessarily follows that the presumption
of innocence is not dethroned, that the burden of proof rests, as to
this averment, upon the Commonwealth.    If this be not true, we have
the incredible result that a law based upon humanity, logic and ·
common sense, holds the prisoner innocent until he is proved guilty,
but as to the vital requisite to the crime it requires him to prove
his innocence.    The burden of proof in the sense used by the court
below—the affirmative of the issue as to the material averment,
"he did, then and there kill," never shifts from the Commonwealth.
The character of the proof to support this defence, and the mea-
sure of that proof may well be what this court and others of like
enlightened character hold them to be—carefully scrutinized and
preponderating proof, but these do not justify the charge of the
court nor sustain the illogical position that the burden of proof is
upon both the Commonwealth and the prisoner as to an essential
element in the crime.

The charge cannot be sustained upon authority.    We mean by
this, that the broad declaration, that "If a defendant offers to show
an alibi, the burden is upon him, there he becomes the affirmant,
he becomes the actor, and the law requires him to prove to your
satisfaction that his allegation of being somewhere else is true," is
not warranted in law.    If for no other reason, it is unsound, be-
cause it imposes the duty of satisfying the jury of its truth upon
the prisoner, and denies him the benefit of this proof in qualifying
all of the proof on this subject, so as to enable the jury to deter-
mine whether a reasonable doubt existed.    He is held to the task
of proving it to their satisfaction—of proving it as a truth.    But
we place the case here upon other ground, as well as upon this.
The burden of proof is not upon the prisoner; he does not become
the affirmant—the actor.    The burden is still upon the Common-
wealth.    The jury must carefully scrutinize the evidence upon the
alibi, and if there be a preponderance of the whole evidence from
which they are satisfied the alibi is established; or if, taking this
in connection with all of the other proof in the cause, a reasonable
doubt is raised, they must acquit.    The charge, as a whole, asserts
the doctrine that the prisoner must prove the alibi affirmatively;

[Turner *v.* Commonwealth.]

if he fails in doing so, that failure is to be considered as a fact against him; and if, upon the whole case, including that fact, there is satisfactory proof of the defendant's guilt, they should convict him.

Authorities need not be quoted for the propositions:—

That it devolves upon the Commonwealth to prove all of the material allegations in the indictment; or,

That, if, upon the whole evidence, the jury have a reasonable doubt as to the defendant's guilt, they must acquit.

Even where a prima facie case is made out, the burden of proof is not thereby shifted on to the defendant. The presumption of innocence is still his shield, and comes to aid all of the proof he adduces: Com. *v.* McKie, 1 Bennett & Heard's Lead. Crim. Cas. 347 and note; State *v.* Flye, 26 Maine 312; Chaffee *v.* U. S., 18 Wall. 544, *supra* 22; Toler *v.* State, 16 Ohio St. 583; Spencer *v.* State, 50 Ala. 124; Line *v.* State, 51 Ind. 173; Wharton on Homicide, sect. 652; Pollard *v.* State, 53 Miss. 410.

We can readily understand how it must result, from the statement in Fife *v.* Commonwealth, that the facts are admitted by the defence of alibi, that it necessarily follows that the burden of proof would then be thrown upon him who alleged the reverse of these facts; but, where the fact of killing "then and there" is the issue traversed and denied, and the law is, that an alibi does not admit its truth, it seems inevitable and logical that the presumption of innocence is in full force, and the burden is on the Commonwealth. The doctrine quoted from Wills, which asserts that "A resort to that kind of evidence implies an admission of the truth and relevancy of the fact alleged," if it ever was the law, is not so now. The whole of this sentence in Wills is as follows: "An unsuccessful attempt to establish an alibi is always a circumstance of the greatest weight against the prisoner, because the resort to that kind of defence implies an admission of the truth and relevancy of the facts alleged, and the correctness of the inference drawn from them, if they remain uncontradicted." We have already seen that the first clause of this sentence is not the law. It is not "a circumstance of the greatest weight" as matter of law, and the concluding part of the sentence is merely the reason given for that which is not the law. Judge Dillon, in the case in 20 Iowa 94, discusses this subject, and declares it to be wrong to state to the jury, that the effect of a failure to establish an alibi is to admit the truth and relevancy of the facts alleged. "Whether true or not," he says, "is for the jury to determine;" and this is certainly the only safe doctrine.

The case must go to the jury upon the *whole* evidence: Wharton on Homicide 647; Commonwealth *v.* Choate, 105 Mass. 451; Meyers *v.* Commonwealth, 2 Norris 131; West *v.* State, 48 Ind.

5 NORRIS—5

483; Binns *v.* State, 46 Id. 311; Harvey *v.* State, 40 Id. 516; Stokes *v.* People, 53 N. Y. 181.

Nineteenth error : The definition of a reasonable doubt by the court is, " such a doubt as would make an ordinarily prudent man hesitate before coming to a conclusion." This standard is too low : Commonwealth *v.* Harman, 4 Barr 269; Miller *v.* People, 39 Ill. 458; Pate *v.* People, 3 Gilman 644; State *v.* Oscar, 7 Jones 305 ; People *v.* Ashe, 44 Cal. 288.

" An ordinarily prudent man" may act upon strong probabilities in ordinary or even important affairs. Many such " take the chances," and often win, but it will not do to make the rule in matters of life and death one of ordinary care or strong probability, or even the exercise of ordinary caution in grave matters. It is high diligence, extraordinary care; not absolute certainty, but that caution which men of prudence in every-day life take in matters of the greatest importance to themselves. Under such a charge as in this case a preponderance of proof might induce strong probability and cause " an ordinarily prudent man to act without hesitation," but no preponderance of proof supplies the measure of the law : 1 Starkie Ev. 514, 543; Wharton on Homicide 650 note ; 3 Greenl. Ev. 29; State *v.* Dineen, 10 Minn. 408 ; State *v.* Shettleworth, 18 Id. 208; Otmer *v.* People, 76 Ill. 149; People *v.* Ah Sing, 51 Cal. 372; Anderson *v.* State, 41 Wis. 431; State *v.* Rover, 11 Nev. 343; Burrill Crim. Ev. 199, 200 ; Wills Crim. Ev. 7.

Twenty-second error : The name of the court in the proceedings is only half the constitutional name : Cons. 1790, 1838, 1873, art. 5, sect. 1, 3 ; Purdon 382 ; 1 Wh. Crim. Law 223; 5 Bac. Abr. 93, 94 ; Dougherty *v.* Commonwealth, 19 P. F. Smith 286 ; Purd. 377, sect. 12; Commonwealth *v.* Kass, 3 Brewst. 426.

Twenty-third error : There can be no additional law judge under the new Constitution in districts composed of more than one county : Cons. 1873, sect. 5; Kilpatrick *v.* Commonwealth, 7 Casey 198; Myers & Murray *v.* Commonwealth, 29 P. F. Smith 308; Commonwealth *v.* Zephon, 8 W. & S. 382; 1 Hale P. C. 497 ; 4 Blackstone 178 ; Clark *v.* Commonwealth, 5 Casey 129; Commonwealth *v.* Burrell, 7 Barr 34.

Twenty-fourth error: The words " true bill" on the indictment when it went to grand jury, are in excess of power of the district-attorney. It interferes with freedom of the grand jury. It debases the institution and serves to make it subservient to power. It is an interference and is matter of substance : Wh. Crim. Law 477, 500; 1 Chit. Crim. Law 323.

Twenty-fifth error: The implication in indictment is that deceased was not "in being." The indictment ignores the idea of existence and asserts that of place: Wharton on Homicide 805; 1 Archbold 831; 5 Bac. Abr. 68; Lutz *v.* Commonwealth, 5 Casey 443; 1 Wh. Precedents 114.

[Turner v. Commonwealth.]

· *Thomas H. Murray, Cyrus Gordon* and *William M. McCullough* (District-Attorney), for Commonwealth.—While it may not be competent to show the commission of a crime charged by proof of another crime unconnected with that in the indictment, it is competent to show a relation existing between the parties from which motive may be inferred : Shaffner *v.* Commonwealth, 22 P. F. Smith 60.  While the prosecution cannot attack the character of a prisoner by the proof of acts not charged in the indictment, whether to prove general character or a tendency to commit the crime charged, yet where such acts are so connected by circumstances with the particular crime in issue that this proof has a bearing upon the issue other than expressed above, "such acts may be proved :" State *v.* Lapage, 57 N. H. 245.  This offer is admissible, if for no other reason, because it is proof of a relation existing directly between prisoner and deceased.  In this respect it differs from that large class of cases where either the crime was committed, or relation sustained by prisoner in reference to a third party.  And why cannot a relation existing between the parties be proven ?  Surely, not to be rejected (if admissible on other grounds) because that relation may be such as to include also a crime.

In cases where the *scienter* or the *quo animo* constitutes a necessary part of the crime charged, as in cases of forgery, murder, and the like, testimony of such acts or declarations of the prisoner as tend to prove such knowledge or intent is admissible, notwithstanding they may constitute in law a distinct crime : Dunn *v.* State, 2 Ark. 229 ; Tharp *v.* State, 15 Ala. 749 ; Stout *v.* People, 4 Park Cr. Cas. 71 ; Com. *v.* Ferrigan, 8 Wright 387.  It is a general rule that declarations of a party accused of a crime made in his own favor, after the time of the alleged commission of the crime, are not evidence for him, unless the accompanying acts are part of the *res gestæ :* 1 Archbold's Crim. Pl. 429 ; State *v.* Hildreth, 9 Ired. 440 ; State *v.* Scott, 1 Hawk. 24 ; Campbell *v.* State, 23 Ala. 44.

We contend that the burden of proving an alibi rests upon the person who asserts it, and that for the reason that it is of an affirmtive character, and in the highest sense affirmative ; and that to avail him the proof on that averment must be satisfactory to the minds of the jury : Commonwealth *v.* Choate, 105 Mass. 451 ; Briceland *v.* Commonwealth, 24 P. F. Smith 464.  An attempt to manufacture testimony is a circumstance against a defendant, especially in an alibi : Stark. Ev. 505 ; Briceland *v.* Com., *supra ;* Cathcart *v.* Com., 1 Wright 113 ; Com. *v.* Twitchell, 1 Brewster 608 ; Wills on Circumstantial Evidence 83 ; Burrill on Circumstantial Evidence 519 ; Commonwealth *v.* Webster, 5 Cushing 311.

In several sections of the new constitution the term "Oyer and Terminer" is used as a designation of a court.  So the Act of

[Turner *v.* Commonwealth.]

March 18th 1875, Pamph. L. 28, makes a like designation in fixing the terms for holding courts. So also in the Act of February 27th 1875, Pamph. L. 62, and various other acts.

A fair and reasonable construction of the new constitution, we contend, does not prohibit but sustains the Act of 1874, providing for an additional law judge in the Twenty-fifth District, and is in strict accordance with the intent of the framers of the constitution, the 5th section of which provides that "whenever a county shall contain 40,000 inhabitants it shall constitute a separate judicial district, and shall elect one judge learned in the law, and the General Assembly shall provide for an additional law judge, as the business of said districts may require. Counties containing a population less than is sufficient to constitute separate districts shall be formed into convenient single districts, or, if necessary, may be attached to other contiguous districts, as the General Assembly may provide. The office of associate judge, not learned in the law, is abolished in counties forming separate districts; but the several associate judges in office when this constitution shall be adopted shall serve for their unexpired terms."

The 9th section provides that "Judges of Common Pleas, learned in the law, shall be Judges of the Courts of Oyer and Terminer, Quarter Sessions of the Peace and General Jail Delivery, and of the Orphans' Court, and within their respective districts shall be justices of peace as to criminal matters."

The Act of 9th April 1874, Pamph. L. 54, designating the judicial districts of the state, designates the Twenty-fifth District, composed of Clearfield, Centre and Clinton counties—which had been an established judicial district for many years prior to the adoption of the new constitution—authorized the election of an additional law judge for this, among other districts similarly situated, and also provided that said judges shall have the same power, authority and jurisdiction as the president judges in the several courts of their districts. The Act of 18th March 1875, Pamph. L. 25, authorizes each of the law judges in any district to hold at the same time with the others, separate courts, including the Court of Oyer and Terminer.

Under these Acts of Assembly, his honor, Judge Orvis, who presided at the trial of this cause, was elected.

Mr. Justice GORDON delivered the opinion of the court, May 6th 1878.

The exceptions in this case are very numerous, and we must, as far as we can, classify and examine them in this manner. Naturally those exceptions which go to the jurisdiction of the court first claim our attention. It is alleged, firstly, that the indictment was found, and the defendant tried and sentenced, in a court unknown to the constitution and laws of this Commonwealth. This allega-

[Turner v. Commonwealth.]

tion is based on the fact that the record names the court as the
" Oyer and Terminer," and omits " and General Gaol Delivery."
This, however, is exactly what is done in the eighth and ninth sec-
tions of the fifth article of the constitution of 1874, so that such a
court cannot be said to be unknown to the constitution. The first
of the above-named sections designates the criminal courts of Phil-
adelphia and Allegheny counties as " the Courts of Oyer and Ter-
miner and Quarter Sessions of the Peace ;" the second connects
the term " General Gaol Delivery," not with the Court of Oyer
and Terminer, but rather with, as it immediately follows, the
Quarter Sessions. This latter section is that which confers upon
the judges the power to hear and determine all cases of a criminal
character. Thus it comes to pass that our judges have, in a single
commission, all the powers which the English judges derived from
several. Indeed, as we learn from Blackstone's Commentaries
(vol. 4, p. 270), anciently it was the custom to issue separate writs
of gaol delivery, called writs *de bono et malo*, for each case. This
practice, being found to be attended with inconvenience, was in
the course of time abolished, and instead thereof, a general com-
mission was substituted for all prisoners triable at a particular
term. This commission, unlike that of oyer and terminer, ran
only to " try and deliver" prisoners in each separate gaol. (Id.
271, note.) The reason for this was, that as the commission of
oyer and terminer only empowered the judges to " inquire and
determine," they could proceed under it only upon indictments
found at the same term as that at which the several trials were
heard, hence the necessity of an additional writ for the disposition
of indictments and other cases previously found and instituted.
Under our system this writ has no place ; and it is obvious .that
the name itself can have no legal significance, since it but imports
a power which every judge possesses by virtue of his general com-
mission. We conclude, therefore, that the omission of the words
" general gaol delivery" was of no importance, and, had the atten-
tion of the court been called thereto, might have been supplied by
amendment.

It is alleged, secondly, that the defendant was tried and sen-
tenced by an additional law judge, who had no constitutional power
to try pleas of murder in a " double district." The validity of the
commission of Judge Orvis, who held the Court of Oyer and Ter-
miner in which the defendant was convicted, is thus called in ques-
tion. It is insisted that the Act of Assembly which authorizes the
election of an additional law judge for the 25th district, composed
of the counties of Clearfield, Centre and Clinton, was and is uncon-
stitutional and void. This point is raised under the 5th section of
the 5th article of the constitution. It will be observed that when,
by this section, a county is to compose a *separate* district, provision
is made for additional law judges ; but for *single* districts, formed

[Turner *v.* Commonwealth.]

of several counties, no such provision is made.    The learned counsel for the defence regards this omission as significant.    Not, indeed, because, without more, the legislature would not possess the power to create such judges, since it is conceded that such power must necessarily belong to that body if it be not in terms withheld, but because it is said the phrase "single district," as used in this section, means a district having but a single law judge. To prove this, reference is had to the debates in the convention. But if these prove anything, they prove too much for the argument which they are adduced to support, for they advocate districts with single judges, without regard to whether those districts were to be composed of one or several counties.    As the idea was dropped as impracticable in single county districts, we may well suppose it was also abandoned as to those formed of several counties ; for it is not reasonable to suppose that, whilst provision was being made for the possible wants of districts having populations of forty thousand, those having possibly double that number should have been wholly neglected.    We are inclined to think that that word "single," directly connected as it is with the word "district," is to be regarded as a synonym of "separate," and as having been used to avoid tautology.    If not, its use, in the connection in which it now stands, was unfortunate, for grammatically it qualifies and characterizes the judicial districts, and does not limit the number of judges.

The first and ninth assignments of error cannot be sustained. They relate to admissions of evidence and the charge of the court on the subject of the relations existing between Turner and Mrs. Waple.    That adulterous intercourse may be proved as a circumstance leading to the commission of crime, is ruled in the case of Ferrigan *v.* Commonwealth, 8 Wright 386, and it would thus seem to follow that if the criminal conduct proposed to be proved becomes in any way a link in the chain of circumstances which connects the defendant with the crime.charged, it is admissible in evidence. That such circumstance is in its character criminal, and tends to exhibit another crime than the one charged, is no reason for its exclusion.    It certainly does not follow that evidence, otherwise legitimate, should be excluded only because it tends to exhibit a character not accordant with an honest life.    We need not say how important this testimony is to the case now in hearing, and how little there would be without it to connect the defendant with the offence charged ; it is enough to say that it is a legitimate part of the case, and that it was properly admitted.    It is conceded that an independent crime, unconnected with the matter in trial, may not be put in evidence, for this is but proof of character, and that in its most objectionable shape ; such, however, is not the case with the testimony under consideration.    The criminal relation is

[Turner *v*. Commonwealth.]

but one of a series of facts connecting the defendant with the homicide, and a proper use was made thereof by the prosecution.

The second assignment covers nothing of importance. Turner's voluntary declarations of innocence at the time of his arrest explained nothing in connection with that act; they were purely gratuitous, and hence no part of the *res gestœ*. The case of Rhodes *v*. Commonwealth, 12 Wright 396, is not in point, for in that case the circumstances of the search rendered explanation necessary, and therefore the declarations of the defendant became as much a part of the transaction as the search itself.

There is nothing in the third and fifth assignments. If it was deemed important by the defendant to prove that Waple asked Quigley and Strickland to come into the house, it was proper for the prosecution to ascertain why they were so asked, and what was said and done after they had complied with the invitation. The whole was one transaction, and could not be dissevered to suit the purposes of either party. In like manner, when the defence undertook to show Thomas Waple's whereabouts at and about the time of the murder, and his animus towards the deceased, it was altogether proper for the Commonwealth to endeavor to rebut the presumptions arising from those facts; for, however concealed, their purpose could have been nothing less than to direct the attention of the jury to Thomas Waple as the real criminal.

The seventh, eighth, tenth, eleventh, thirteenth, seventeenth, eighteenth, twentieth, and twenty-first assignments are not sustained. In these the complaint is that the court permitted the jury to find a verdict against the prisoner upon a degree of proof less than that required by law in capital cases. We think this complaint not well founded. The evidence, if believed, was sufficient to warrant a conviction; and an examination of the charge shows that, in submitting that evidence, the court omitted no proper instruction. The attention of the jury was called to the duty resting upon it of carefully and faithfully weighing and examining the evidence. That body was told that in order to work a conviction each material fact must have been satisfactorily proved, and if it remained in doubt, or if the defendant's proof showed that it could not be true, it must not be regarded as a fact in the case. The learned judge further says, in answer to the defendant's first point, "you must be satisfied beyond a reasonable doubt, first, that the murder was committed; second, that this defendant was the guilty agent, or you would not be justified in finding a verdict of guilty." Again, in answer to the fifth point, "we told you in our charge that the facts proved must be such as to exclude every reasonable hypothesis but that of the prisoner's guilt." Surely if the jury misunderstood this language it was no fault of the court; everything was said that the defendant had a right to require.

We pass the twenty-fourth, twenty-fifth, and twenty-sixth assign-

[Turner *v.* Commonwealth.]

ments, with the remark, that we are not convinced that there is either anything wrong in the indictment, or that it was not proper for the grand jury to adopt the words "true bill," as printed on the back thereof.

So far we agree with the rulings of the court below, but we must now advert to some particulars of this trial which compel us to dissent. And, first, it was improper to submit the general character of the witnesses to the jury without evidence touching such character. There is a very wide distinction between the personal character of a witness and the character of the evidence which he may give in a particular case. If the former be good, though the latter be impeached by facts and circumstances developed during the trial, yet the defects in such testimony may be accounted for by mistake or lack of memory, and whatever of it remains uncontradicted may be accepted without hesitation; on the other hand, if the former be bad, corroboration must follow the evidence in all its material parts or it is worthless. This submission was erroneous in that it gave to the jury the power of testing evidence by that which could be found only outside of the trial itself, perhaps in the personal knowledge of some of the jurors. Perhaps this submission was inadvertent, and from its generality may have been harmless; nevertheless, we have thought proper to advert to it in order that its repetition may be avoided.

A much more important error is found in the twelfth assignment. This covers the submission to the jury of the alleged attempt by the defendant to manufacture evidence. As was said by the court, "if it was proved that this defendant did so attempt to manufacture evidence that was false, it is a fact which you must consider." The matter is thus put as an important element of the case. Now if there was testimony to support this submission no fault could be found with it, but we have looked in vain for such testimony, though, in this, we have had the assistance of the able counsel for the Commonwealth. The evidence on this branch of the case is as follows: George Morgan testifies to Turner's presence at the depot at Wallaceton, between two and three o'clock of the afternoon of the day of the murder. He says the defendant was in the office before the arrival of the freight train, and assisted him in checking his manifests. On cross-examination, he stated that at two or three times, or perhaps oftener, Turner had called his attention to this fact, and that, previous to these reminders on the part of Turner, he had not recollected the time. As, however, Morgan seems to have been a reputable witness, it would seem, that the defendant but called his attention to what was the truth, and thus, in a legitimate manner, obtained for himself an important piece of testimony. This act, unaccompanied as it was by anything resembling an attempt to corrupt this witness, was altogether proper, unless, indeed, one accused of crime is to make no effort in the

[Turner v. Commonwealth.]

way of self-defence. Then, it is said, he was seen in close conversation with a witness named David Snyder, but what he said to Snyder, or Snyder to him, is wholly unknown. Certainly nothing in the way of evil should be predicated of a matter such as this, unless the intent was to convict the defendant on bare suspicion.

Again, it is said, he contradicted John Rice; but John Rice does not allege that. Here is his testimony :—

Ques. Mr. Turner went to the jury inquisition ? Ans. He was there. Yes, sir. I told Martin that the old man had contradicted me. He says, "did I tell you this was Friday night?" I says, yes. He says, "I must have been mistaken, it was on Thursday."

Ques. He corrected you? Ans. No; he did not correct me. He said he had been down to John Stamer's to see about the value of switch ties; he did not say he had been out hunting.

In this there is nothing which resembles a contradiction of the witness; on the contrary, his statement is taken for verity, and Turner says, "I must have been mistaken."

Beyond what we have recited we discover nothing that tends, even remotely, to sustain the charge of an attempt, by the defendant, either to manufacture or to prevent evidence, and we cannot but pronounce as wrong the submission of such a question to the jury.

We must also take issue with the learned judge on the rule which he has announced as the governing one in a defence resting upon an alibi. He says (page 20 of the paper-book), "an alibi is a perfect defence when it is fully, clearly, and satisfactorily established, but the burden is upon the person asserting it to establish it." And further on (page 23), "If proved it constitutes a complete defence ; if not proved, and you think it has not been proved, the attempt to manufacture evidence is a circumstance which always bears against the person. No innocent person is driven to manufacture evidence."

As an abstract proposition the first part of this instruction might be regarded as correct, for, in the first place, as is said in Briceland v. The Commonwealth, 24 P. F. Smith 463, per AGNEW, J., when a defence rests upon proof of alibi, it must cover the time when the offence is shown to have been committed, so as to preclude the possibility of the prisoner's presence at the place of murder.

It thus necessarily follows, that if the evidence on this point is imperfect it comes to nothing. So, if the case of the Commonwealth rested upon positive and undoubted proofs, it might require like testimony to beget a reasonable doubt, and hence, less than full, clear, and satisfactory evidence would be worthless. The fault, however, with this instruction, in the present case, which is one depending wholly upon circumstantial evidence, is that, under it, if the testimony fails to reach a strength sufficient to work an acquittal, it is in effect excluded from the case. This is a rule inadmissible in modern criminal jurisprudence; for proof of an alibi is

[Turner *v.* Commonwealth.]

as much a traverse of the crime charged as any other defence, and proof tending to establish it, though not clear, may, nevertheless, with other facts of the case, raise doubt enough to produce an acquittal.　We are inclined to think with Mr. Greenleaf (Ev. vol. 1, sec. 81 b) that the true rule in criminal cases, notwithstanding some decisions to the contrary, is, that the burden of proof never shifts, but rests upon the prosecution throughout, so that, in all cases, a conviction can be had only after the jury have been convinced, beyond a reasonable doubt, of the defendant's guilt.　From this it results, that, if from any, or from all the evidence taken together, a reasonable doubt of the defendant's guilt is raised, there should be an acquittal.

The latter part of the instructions above cited is manifestly wrong in this, that the jury are told that the defendant, having undertaken to defend himself on the ground of alibi, must produce evidence sufficient to work his acquittal, or, if not, his failure is in itself evidence of guilt.　This is adding a penalty to what may be, not the defendant's crime, but his misfortune—a result that we cannot sanction.　Were the defendant detected in an attempt to corrupt witnesses, or to manufacture evidence, it would certainly weigh heavily against him, but his mere failure to prove a given point of his defence is no evidence of such attempt, and it ought not to have been submitted as such.

The sentence of the Court of Oyer and Terminer is reversed, and a new *venire* is ordered.