660 A.2d 1326

COMMONWEALTH of Pennsylvania

v.

James William CROCKFORD, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 22, 1995.

Filed June 8, 1995.

24

Albert J. Flora, Jr., Wilkes–Barre, for appellant.

Peter Paul Olszewski, Jr., Dist. Atty., Wilkes–Barre, for Com., appellee.

Harold H. Cramer, Philadelphia, for PA Dept. of Transp., amicus curiae.

Before ROWLEY, P.J., and CAVANAUGH, WIEAND, McEWEN, CIRILLO, BECK, TAMILIA, FORD ELLIOTT and SAYLOR, JJ.

FORD ELLIOTT, Judge:

Appellant comes before us challenging the judgment of sentence imposed upon him following his conviction pursuant to 75 Pa.C.S.A. § 1543(b), pertaining to driving while operating privileges are suspended or revoked. Finding no error below, we affirm.

The factual setting from which this case devolves is simply recounted. The Commonwealth presented a single witness at trial. State Trooper Robert Halecky testified that on March 1, 1993, while on patrol in a marked police car, he observed appellant operating a vehicle with an expired inspection sticker. Prompted to effect a traffic stop of appellant, Trooper Halecky asked appellant to produce a driver's license and an owner's card, but appellant was unable to comply with the license request since he was not carrying one. Upon discerning appellant's name, address, and date of birth, Trooper Halecky returned to his car and ran a records check on appellant. The records check revealed that appellant's license had been suspended. When Trooper Halecky questioned appellant as to why he was under suspension, appellant was unable to state a possible reason.

Trooper Halecky went on to testify that subsequent receipt of appellant's certified driving record from the Pennsylvania Department of Transportation (PennDOT) revealed that appellant's driver's license had been suspended for driving under the influence. The record further indicated that the license suspension was effective for one year from October 28, 1992, and that official notice thereof was mailed to appellant on that same date.

Following Trooper Halecky's testimony, the Commonwealth offered appellant's certified driving record into evidence and rested. Appellant thereupon demurred on the basis that the Commonwealth had failed to meet its burden of proof insofar as demonstrating that appellant had actual notice of his license suspension. The trial court refused to grant a demurrer and the defense proceeded with its case, likewise presenting a sole witness, in the person of appellant.

In the course of his testimony, appellant admitted that he had two prior convictions for driving under the influence.[1] He had been told that his license would be suspended and that he would be notified by the state. Appellant was asked by the court to produce his license at trial and was told that the court would find him not guilty if he could. Notes of testimony, 2/2/94 at 23. Appellant explained that he did not bring his license because he was not instructed to do so, and he did not think to bring it on his own because it was no longer valid. Appellant was convicted of driving while under suspension, and now appeals.

Although couched by appellant as two arguments, he effectively raises a single issue on appeal. Appellant avers that the Commonwealth must show that appellant had actual notice of his suspension, and that it failed to meet this burden. We agree that the Commonwealth bears the burden of proving notice beyond a reasonable doubt, but find that the Commonwealth's evidence at trial, left unrebutted, sufficiently proved such notice. Therefore, we affirm.

■ Preliminarily, we begin by reiterating our standard of review:

In examining a challenge to the sufficiency of the evidence, it is well established that an appellate court must determine whether the evidence was sufficient to enable the jury to find every element of the crime charged beyond a reasonable doubt, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner.

*Commonwealth v. Zimmick*, 539 Pa. 548, 554, 653 A.2d 1217, 1220 (1995). It would also be beneficial at this point to set out the particular statute at issue:

1. Appellant was arrested on March 29, 1991 and January 26, 1992, for driving under the influence. However, because he entered guilty pleas to both violations on the same day, he was treated as a first offender on each. *See* notes of testimony, 2/2/94 at 20–21.

**§ 1543. Driving while operating privilege is suspended or revoked**

. . . .

**(b) Certain offenses.**—Any person who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when their operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) or because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3731 shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days.

75 Pa.C.S.A. § 1543(b).

The seminal case in this area is *Commonwealth v. Kane,* 460 Pa. 582, 333 A.2d 925 (1975), which held that it is necessary for the Commonwealth to prove that the accused had actual notice of suspension in order to convict of driving while under suspension. *Kane* interpreted the former 75 P.S. § 624, our prior statute governing driving under suspension. Under § 624, driving while under suspension was a misdemeanor subject to the general culpability requirements of 18 Pa.C.S.A. §§ 301, 302, and proof of *mens rea.* 75 Pa.C.S.A. § 1543(b), however, is defined by the Legislature as a summary offense. As such, it is exempted from general culpability requirements pursuant to 18 Pa.C.S.A. § 305. Still, our supreme court has plainly held that proof of actual notice of suspension remains a necessary element of 75 Pa.C.S.A. § 1543. *See Commonwealth v. McDonough,* 533 Pa. 283, 621 A.2d 569 (1993). *See also Commonwealth v. Horney,* 365 Pa.Super. 152, 529 A.2d 18 (1987); *Commonwealth v. Burkett,* 300 Pa.Super. 72, 445 A.2d 1304 (1982). Notice is, therefore, a judicially created element, designed to protect a defendant's due process rights.

In addition to requiring actual notice, *Kane* also ruled that proof that notice was mailed was not sufficient *alone* to prove the vital element of actual notice. As the *Kane* court stated:

[T]he issue now being discussed is not whether evidence of mailing is *admissible evidence,* but whether admissible evi-

dence of mailing, standing alone, is *sufficient evidence* to establish one of the elements of the crime *beyond a reasonable doubt.* ... [E]ven though an inferred fact is *more likely than not* to follow from a proven fact, in a criminal case, the inference 'must also satisfy the criminal "reasonable doubt" standard if proof of the crime charged or an essential element thereof depends upon its use.'

. . . .

... Although the records stated that a notice had been mailed, there was no other proof that appellant had actual notice of his suspension. There was no evidence ... that appellant's operator's license was returned to the Bureau ... There was no evidence that the appellant resided at the address shown on the notice at the time the notice was mailed. Moreover, we note that the appellant's address typed on the notice of suspension was different from the appellant's address typed in two other places in the certified records.

*Id.*, 460 Pa. at 584–86, 333 A.2d at 926, *quoting Leary v. United States*, 395 U.S. 6, 36 n. 64, 89 S.Ct. 1532, 1548 n. 64, 23 L.Ed.2d 57, 81, n. 64 (1969) (emphasis in original). The concern of the *Kane* court was, quite simply, that letters get lost in the mail; evidence of mailing alone might suffice to show a strong likelihood of actual notice, but it could not constitute proof beyond a reasonable doubt.

In the twenty years since *Kane* was decided, numerous rulings of both the supreme court and this court have refined its basic message. While these cases have set out no hard and fast rule as to the kinds of proof required to establish actual notice of suspension, they do indicate that evidence of mailing of notice coupled with some other, additional evidence of knowledge will suffice to establish actual notice beyond a reasonable doubt.[2] The question has always been, how much evidence is sufficient.

2. We pause to note two other related lines of cases that have devolved from *Commonwealth v. Kane.* In *Commonwealth v. Gamble*, 376 Pa.Super. 590, 546 A.2d 681 (1988), this court ruled that although evidence of mailing (to a prior, stale address) was presented and appellant was

In *Commonwealth v. Burkett, supra,* 300 Pa.Super. 72, 445 A.2d 1304, for example, this court held that evidence that notice was mailed, combined with evidence that defendant returned his license to the Bureau of Traffic Safety, and that, when stopped by police, defendant switched seats with a passenger, was sufficient to establish actual notice beyond a reasonable doubt.

In *Commonwealth v. Martin,* 346 Pa.Super. 129, 499 A.2d 344 (1985), this court was uncertain whether the additional evidence established actual notice, and therefore remanded for an evidentiary hearing. In *Martin,* the defendant's certified driving record was admitted into evidence. This record showed the original mailing and also displayed a cryptic notation that an affidavit had thereafter been received. We remanded to determine if this affidavit evinced actual notice.

In *Commonwealth v. Gray,* 356 Pa.Super. 299, 514 A.2d 621 (1986), *allocatur denied,* 514 Pa. 638, 523 A.2d 345 (1987), we found actual notice where there was evidence that notice was mailed, together with proof that the defendant had surrendered his license on a previous suspension for which notice was mailed to the same address, as well as evidence that the defendant was not carrying his license when he was stopped.

under the belief that his license was suspended, judgment was nevertheless properly arrested. Appellant believed that his license was suspended for failure to respond to citations. In fact, it was suspended for driving under the influence. Appellant claimed he was unaware of the nature of his suspension. This court held that appellant not only had to have actual notice of his suspension, but actual notice of the true nature of the suspension. The court refused to subject appellant to the more severe penalties of 75 Pa.C.S.A. § 1543(b).

Recently, in *Commonwealth v. Dean M. Taylor,* 437 Pa.Super. 102, 649 A.2d 453 (1994), this court echoed the holding in *Gamble. Dean M. Taylor* refused to apply the precept announced in *Commonwealth v. Dietz,* 423 Pa.Super. 366, 621 A.2d 160 (1993), *allocatur denied, Dietz v. Commonwealth,* 535 Pa. 634, 631 A.2d 1007 (1993), to the effect that the Commonwealth can prove actual notice by demonstrating mailing combined with the fact that the driver failed to produce a license when stopped. The *Dean M. Taylor* court reasoned that while failure to possess a license might indicate knowledge of suspension, it does not indicate knowledge that the suspension is for a driving under the influence offense. Nevertheless, the court found actual notice based on evidence of mailing combined with the fact that appellant was advised that he would undergo a six-month suspension when he entered an ARD program. This is not an issue in the instant case.

In *Commonwealth v. Horney, supra,* at 365 Pa.Super. 152, 529 A.2d 18, actual notice was found where there was evidence that notice was mailed, together with defendant's admission that he received an earlier letter at the same address notifying him that he had to take a special exam to keep his driver's license, and evidence that he failed to complete the exam.

More recently, in *Commonwealth v. Dietz, supra,* 423 Pa.Super. 366, 621 A.2d 160, actual notice was predicated upon mailing of notice combined with several additional factors. Defendant fled the scene of an accident on foot. When first questioned by investigators, he stated that his wife had been driving the vehicle. Defendant later admitted that he had been driving. The court found that the defendant's flight and deception indicated that he knew he was not allowed to drive. The court was also swayed by the defendant's history of convictions for driving while under suspension, and found it incredible that defendant could possibly believe that he was permitted to drive.

If this compilation of cases stands for any proposition, it is that the the type of actual notice contemplated and required in license suspension cases can be express or implied actual notice. As delineated in *Black's Law Dictionary:*

Actual notice has been defined as notice expressly and actually given, and brought home to the party directly. The term 'actual notice,' however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.

*Id.* at 1061–1062 (6th ed. 1990).

Notice is a question of fact, and anything that proves knowledge or is legal evidence showing that knowledge exists

can be sufficient. As a practical matter, in most cases it is virtually impossible for the Commonwealth to prove positively that the defendant received express actual notice of suspension; only the defendant would have such knowledge. The Commonwealth, relying only upon the facts and circumstances of a case, can, at best, impute such knowledge to the defendant.[3] To hold otherwise would make the provisions of § 1543 virtually unenforceable and unworkable.

Hence, in response to appellant's inquiry as to whether the Commonwealth is required to prove actual notice of suspension to sustain a conviction under 75 Pa.C.S.A. § 1543(b), the courts of this Commonwealth have repeatedly answered in the affirmative. The Commonwealth is required to establish actual notice which may take the form of a collection of facts and circumstances that allow the fact finder to infer that a defendant has knowledge of suspension. We now turn to the nature of the facts and circumstances that will satisfy the Commonwealth's burden of establishing a *prima facie* case of notice.

■ As set forth in *Commonwealth v. Zimmick*, 539 Pa. 548, 653 A.2d 1217, our supreme court's most recent pronouncement on the issue:

Factors that a finder of fact may consider in determining circumstantially or directly whether a defendant had actual notice of his or her suspension include, but are not limited to, evidence that the defendant was verbally or in writing apprised of the license suspension during the trial or a plea, statements by the accused indicating knowledge that he or she was driving during the period in which his or her license had been suspended, evidence that PennDOT sent by mail the notice of the suspension to appellant's current address,

3. We note that the Commonwealth is required to prove more than constructive notice:

Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.

*Black's Law Dictionary, supra* at 1062. Constructive notice is a presumption of law, while actual notice requires proof of facts and circumstances showing knowledge actually received.

evidence that PennDOT's notice of suspension was not returned as undeliverable, attempts by the accused to avoid detection or a citation, and any other conduct demonstrating circumstantially or directly appellant's knowledge of the suspension or awareness of guilt. *See, e.g., Commonwealth v. Dietz,* 423 Pa.Super. 366, 370–71, 621 A.2d 160, [sic] *appeal denied,* 535 Pa. 634, 631 A.2d 1007 (1993) (driver's flight from crash site and misleading conduct demonstrated that driver knew he was not permitted to drive; driver's failure to produce a driver's license is presumptive knowledge of suspension).

*Zimmick, supra,* 539 Pa. at 555–56, 653 A.2d at 1221.

■ Instantly, and contrary to appellant's argument that the Commonwealth only produced evidence of a PennDOT suspension mailing, we decide that the Commonwealth presented evidence as to three crucial facts: 1) appellant's license had been suspended for a DUI offense; 2) notice of appellant's suspension had been mailed by PennDOT on October 28, 1992;[4] and 3) appellant failed to produce a current driver's license when he was stopped on March 1, 1993. Today, we hold that these factors, in conjunction, are sufficient to meet the Commonwealth's burden to prove notice of suspension.[5]

Both appellant and the Commonwealth have seized upon this court's decision in *Commonwealth v. Dietz, supra,* 423 Pa.Super. 366, 621 A.2d 160, to make their various arguments on appeal. In *Dietz,* a panel of this court held that in order for a defendant to invoke the defense of lack of actual notice, it must be established at trial that a current driver's license was produced at the time of the offense, or within 15 days thereafter, pursuant to the mandates of 75 Pa.C.S.A. § 1511 (which requires drivers to carry their licenses while operating their

**4.** On appeal, appellant does not argue that the notice was sent to an incorrect address. *See* note 9, *infra.*

**5.** We note that these factors are sufficient, but not necessary, for the Commonwealth to establish its *prima facie* case. The Commonwealth is certainly free to introduce any other evidence available to establish actual notice. Furthermore, in the event that a defendant is able to produce a current license when stopped or thereafter, or some other evidence of lack of notice, the Commonwealth must rely on other available evidence to meet its burden.

vehicles and to produce them upon demand). *Dietz* posited that when driving privileges are suspended, the driver is required to surrender his license under 75 Pa.C.S.A. § 1540. If a driver claims no actual notice of suspension, he should be able to produce a current license; the underlying assumption is that if the driver cannot produce such current license, it is either because he surrendered it or because he knows it is not valid. *Dietz* concluded that a defendant's failure to possess a current license is presumptive knowledge of suspension. We observe that the supreme court denied allocatur in *Dietz*, and most recently cited it with approval for this very proposition in *Zimmick, supra,* 539 Pa. at 556, 653 A.2d at 1221.

The Commonwealth in the instant case has argued that the language utilized by the *Dietz* court places an affirmative duty on a defendant to produce a current driver's license before availing himself of the "no notice" defense. Appellant counters that this approach abrogates the Commonwealth's burden of proof to a "mere assertion that it mailed a notice to a defendant," and seeks an application of § 1511(b) which the State Legislature did not envision. While we agree with the basic rationale of *Dietz*, we find that both the Commonwealth's and appellant's interpretations of *Dietz* require further review. We look first, however, to the underlying policy of the Commonwealth to ensure safe driving on Pennsylvania's roadways, and the statutes promulgated to effect it.

▮ As has often been stated, most recently by our supreme court in *Commonwealth v. Zimmick, supra,* and *Commonwealth v. Yarger,* 538 Pa. 329, 648 A.2d 529 (1994), operating a motor vehicle in this Commonwealth is a privilege and not a right; as such it is subject to reasonable regulations. *Zimmick, supra,* at 559–60, 653 A.2d at 1222–23; *Yarger, supra* at 336, 648 A.2d at 531–532. Such regulations are set forth in 75 Pa.C.S.A. § 1501 and § 1511 which state in pertinent part:

### § 1501. Drivers required to be licensed

(a) General rule.—No person, except those expressly exempted, shall drive any motor vehicle upon a highway or public property in this Commonwealth unless the person has a driver's license valid under the provisions of this chapter.

### § 1511. Carrying and exhibiting driver's license on demand

(a) General rule.—Every licensee shall possess a driver's license issued to the licensee at all times when driving a motor vehicle and shall exhibit the license upon demand by a police officer, and when requested by the police officer the licensee shall write the licensee's name in the presence of the officer in order to provide identity.

The purpose of these sections is to provide assurance that those who operate vehicles on our highways are properly licensed to do so, after having met certain minimum qualifications. Licensing requirements thus give the Commonwealth a means of protecting the safety of its citizens.[6] Having established the framework in which to consider the parties' arguments, we next address appellant's quarrel with *Dietz, supra,* 423 Pa.Super. 366, 621 A.2d 160.

Appellant argues that allowing the Commonwealth to rely upon appellant's failure to produce a license as presumptive knowledge of suspension shifts the burden to a defendant to prove an element of the offense of which he is charged. Within the context of a license suspension case, we agree with the underlying logic of *Dietz.* It seems entirely likely that where notice of suspension has been mailed, and the subject driver is unable to produce a current license, it is either

6. Appellant argues that to avail itself of § 1511's production requirement, the Commonwealth must establish that the officer informed appellant of subsection (b) of § 1511 which provides that "No person shall be convicted of this section or section 1501(a) if the person produces at the office of the issuing authority or the arresting officer within 15 days a driver's license valid in this Commonwealth at the time of the arrest." 75 Pa.C.S.A. § 1511(b). We find no such obligation on the part of the officer and place no such requirement on the Commonwealth. As noted by appellant, he has not been charged with a violation of § 1511, and § 1511 is only relied upon to the extent that it presents a reasonable exercise of regulatory authority by the Commonwealth.

because he is unable to do so since the license has been surrendered, or he is unwilling to do so because he believes that tendering a suspended license is a futile gesture. The Commonwealth is entitled to such inferences to show actual notice and to satisfy its burden of establishing its *prima facie* case. Appellant is then entitled to rebut such a *prima facie* case by relying on any evidence which may show lack of actual notice of suspension, such as that at the time of his stop by police, appellant was in possession of, or able to produce, a current driver's license.[7]

Appellant claims that such a presumption removes from the Commonwealth the burden of proving notice beyond a reasonable doubt, as required by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). After a thorough review of the case law and the parties' briefs, however, we must disagree. The basis for our disagreement requires a review of the difference between burden of proof and burden of production.

Perhaps the most cogent statement of this distinction, although not directly applicable to the instant case, is found in *Commonwealth v. Sojourner*, 268 Pa.Super. 488, 408 A.2d 1108 (1979) (*Sojourner II* ). In *Sojourner II*, the issue before the court was whether the Commonwealth was required to prove that a defendant was not authorized to possess a controlled substance beyond a reasonable doubt when nonauthorization is an element of the offense charged. *Id.* at 493, 495, 408 A.2d at 1111, 1112. After a carefully reasoned analysis, the court held that the Commonwealth was so required. *Id.* at 497, 408 A.2d at 1113. Recognizing the inherent impossibility in requiring that the Commonwealth prove nonauthorization, however, the majority held that the Commonwealth was entitled to a rebuttable presumption of nonlicensure; the Commonwealth could shift to the defendant the burden of production, but not the burden of persuasion, on the issue of authorization. If the defendant were able to introduce evidence of authorization sufficient to raise a reasonable doubt as to non-authorization,

7. *See* n. 4, *supra.*

the Commonwealth would then have to disprove authorization beyond a reasonable doubt. *Id.* at 501, 408 A.2d at 1114–1115.

In articulating its holding, the majority relied upon *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), to describe the procedural device of shifting burdens. While we recognize that *Patterson* was an affirmative defense case, its language is instructive for our purposes. The *Sojourner II* majority noted that in *Patterson,* Mr. Justice Powell in dissent and Mr. Justice White writing for the majority, "both approved the Model Penal Code's provisions for allocating to the defendant the burden of producing some evidence concerning 'elements'[8] of a particular offense." *Sojourner II, supra,* at 498, 408 A.2d at 1113. As Mr. Justice Powell stated in *Patterson:*

'Furthermore, as we indicated in *Mullaney* [*v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ], even as to those factors upon which the prosecution must bear the burden of persuasion, the State retains an important procedural device to avoid jury confusion and prevent the prosecution from being unduly hampered. The State normally may shift to the defendant the burden of production, that is, the burden of going forward with sufficient evidence "to justify [a reasonable] doubt upon the issue." ... If the defendant's evidence does not cross this threshold, the issue—[whether it be] malice, extreme emotional disturbance, self-defense, or whatever—will not be submitted to the jury.'

*Sojourner II, supra,* 268 Pa.Super. at 498–499, 408 A.2d at 1113–1114, *quoting Patterson, supra,* 432 U.S. at 230–31, 97 S.Ct. at 2337–2338 (Powell, J. dissenting). In his concurrence in *Sojourner II,* Judge Spaeth agreed that the language quoted *supra* from Mr. Justice Powell's dissent succinctly

**8.** "Elements" as used by the Model Penal Code included some so-called affirmative defenses such as justification (self-defense), excuse, and some exculpating mistakes. "Elements" were distinguished from "material elements" which were defined as those that do not "relate exclusively to ... (ii) the existence of a justification or excuse for such [forbidden] conduct." Model Penal Code, Definitions, § 1.14 at 118 (Tent. Draft # 4, 1955). *See also* discussion of the evidentiary burden on a defendant, *supra* at 110.

38

stated the correct analysis vis-a-vis the shifting burden of production; however, Judge Spaeth felt compelled to clarify that analysis further. To do so, he relied upon the following language from the Model Penal Code:

> No single principle can be conscripted to explain when these shifts of burden to defendants are defensible, even if the burden goes no further than to call for the production of some evidence. Neither the logical point that the prosecution would be called upon to prove a negative, nor the grammatical point that the defense rests on an exception or proviso divorced from the definition of the crime is potently persuasive, although both points have been invoked.... What is involved seems rather a more subtle balance which acknowledges that a defendant ought not be required to defend until some solid substance is presented to support the accusation but, beyond this, perceives a point where need for narrowing the issues, coupled with the relative accessibility of evidence to the defendant, warrants calling upon him to present his defensive claim. No doubt this point is reached more quickly if, given the facts the prosecution must establish, the normal probabilities are against the defense, but this is hardly an essential factor.

*Sojourner II, supra,* at 509, 408 A.2d at 1119 (Spaeth, J. concurring), *quoting* Model Penal Code, Comments, § 1.13 at 110–111 (Tent. Draft # 4, 1955).[9]

██ While we recognize that there may be valid distinctions between the instant case and both *Sojourner II* and *Patterson,*

9. *Sojourner II* was an *en banc* decision of this court from which no appeal was taken. Since *Sojourner II* was decided after *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975), and since *Sojourner II*'s holding has remained undisturbed since 1979, we find that it is still good law. *See, for example, Commonwealth v. Woods,* 432 Pa.Super. 428, 638 A.2d 1013 (1994) (noting that *McNeil* was decided before *Patterson v. New York, supra,* and distinguishing *McNeil* from *Sojourner II*); and *Commonwealth v. South,* 408 Pa.Super. 486, 597 A.2d 137 (1991) (noting that the *Sojourner II* analysis has been incorporated into Pennsylvania Suggested Standard Jury Instruction (Criminal) § 13.13(a)(16)(A) (1980), relating to the defendant's burden of production of authorization evidence before the Commonwealth must produce evidence of nonauthorization, and relying for its own analysis of the defendant's burden of production on *Sojourner II*).

nevertheless we believe that the use of a shifting burden of production analysis has application in the instant case and has met the test of Constitutional challenge. While the Commonwealth retains the burden of proving notice beyond a reasonable doubt, a rebuttable presumption of notice is raised where, as here, the Commonwealth introduces evidence of the three factors delineated *supra* at 10. Appellant may then introduce any evidence he can of lack of notice, evidence to which he has unique access. If he is successful in raising a reasonable doubt that he received notice, the burden of production would then shift back to the Commonwealth to introduce evidence sufficient to overcome that doubt.

As our supreme court effectively determined in *Commonwealth v. Yarger, supra,* 538 Pa. 329, 648 A.2d 529, allowing the Commonwealth to establish a *prima facie* case without having first to disprove all of a defendant's possible arguments in rebuttal does not shift the burden of proof (persuasion) to a defendant. Rather, it merely requires that the defense rebut the Commonwealth's case by coming forward with its own evidence (burden of production). A review of the supreme court's holding in *Yarger* is instructive.

In *Yarger,* the supreme court revisited its decisions in *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992), and *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992), cases that dealt with the introduction of relation-back expert testimony to determine blood alcohol level "while driving" for purposes of 75 Pa.C.S.A. § 3731(a)(4) (driving while blood alcohol content is 0.10% or greater).[10] The *Yarger* court held that there is no requirement that the Commonwealth present such testimony to make out its *prima facie* case; rather, it is sufficient that the Commonwealth merely establish "that the driver's blood alcohol content reflects an amount above 0.10%." *Id.* at 334–335, 648 A.2d at 531. Once the Commonwealth has made out its *prima facie* case under § 3731(a)(4), the defendant is then permitted to introduce

10. The need for relation-back testimony was, in most cases, abrogated by statute subsequent to the supreme court's decision in *Yarger. See* 75 Pa.C.S.A. §§ 3731(a)(5) and (a)(5)(a.1).

relation-back expert testimony to rebut the Commonwealth's *prima facie* evidence that the driver was actually driving while his blood alcohol level was 0.10% or greater. If the defendant elects to do so, the Commonwealth may then present its own evidence in the form of expert testimony to refute defendant's testimony. *Id.* It is then up to the trier of fact to weigh the evidence and determine the outcome. This analysis closely parallels the *Sojourner II* analysis, and our own analysis in the instant case. As a result, we find no merit to appellant's claim that the trial court impermissibly allowed the Commonwealth to shift the burden of proof to appellant on the issue of actual notice. Rather, we find that the Commonwealth met its burden of proving notice beyond a reasonable doubt.

Having addressed appellant's argument, we turn next to the Commonwealth's argument that, under *Dietz, supra,* 423 Pa.Super. 366, 621 A.2d 160, appellant should not be allowed to introduce evidence of lack of notice unless he has produced a current driver's license. As the Commonwealth avers, the *Dietz* court held that in order for a person to invoke the "no notice" defense, it is a necessary condition that the defendant establish at trial that a current driver's license was produced at the time of the offense or within 15 days thereafter as provided by § 1511(b). While we agree with the Commonwealth's interpretation of the holding in *Dietz* on this issue, we disagree with *Dietz*'s holding. As a result, we today decide that appellant is *not* precluded from raising a lack of notice defense based on a failure to produce a valid driver's license at the time of the stop or within fifteen days thereafter. Rather, a defendant is still entitled to come forward with any evidence of lack of actual notice in an effort to rebut the Commonwealth's *prima facie* case.[11]

Instantly, although the Commonwealth relied upon this language in *Dietz* as precluding appellant from raising a lack

11. We recognize that a defendant can be effectively estopped from raising the lack of notice argument where notice of suspension is mailed to an old address because the driver has failed to notify the Commonwealth of an address change, as required under 75 Pa.C.S.A. § 1515. The driver cannot rely on this violation to insulate himself from the more serious charge of driving under suspension by claiming

of notice defense, we find that appellant was not so precluded in the court below. The trial court heard all the evidence and appellant's testimony before relying upon appellant's failure to produce a valid driver's license as evidence of actual notice of suspension. As appellant was unable to rebut the Commonwealth's *prima facie* case, we find the evidence sufficient to sustain the conviction.[12]

For the foregoing reasons, judgment of sentence is affirmed, and jurisdiction is relinquished.

WIEAND, J., files a concurring statement which was joined by TAMILIA, J.

CIRILLO, J., files a concurring and dissenting opinion which was joined by SAYLOR, J.

WIEAND, Judge, concurring:

I concur in the result. In my judgment, the evidence was sufficient to establish beyond a reasonable doubt that, when

no notice. This was the holding announced by this court in *Commonwealth v. Heckman*, 404 Pa.Super. 335, 590 A.2d 1261 (1991), and reaffirmed more recently in *Commonwealth v. Minor*, 436 Pa.Super. 35, 647 A.2d 229 (1994). *Compare Commonwealth v. Donald R. Taylor*, 390 Pa.Super. 571, 568 A.2d 1320 (1990). We should note that this line of cases does not have the full support of our supreme court. Although the court affirmed the estoppel concept in *Commonwealth v. McDonough*, 533 Pa. 283, 621 A.2d 569 (1993), it was evenly divided on the decision. Lately, the court has revisited this issue in *Commonwealth v. Zimmick, supra,* 539 Pa. 556, 653 A.2d 221, and the majority appears to approve, although in *Zimmick*, the defendant presented a full defense, after which the trial court found that "the evidence and the reasonable inferences therefrom, sufficiently demonstrated that appellant had actual notice of his suspension." *Id.* at 552, 653 A.2d at 1219–20. However, the majority drew several concurrences. Writing separately, Mr. Justice Zappala agreed with that part of the majority's opinion that found sufficient evidence of actual notice of suspension, but re-asserted his opinion that failure to notify the Commonwealth of an address change should not result in a waiver of the "no notice" defense.

12. We note that proof of actual notice could be made much simpler, and thereby preclude the necessity to engage in the kind of "tempest in a teapot" created in the instant case, if trial judges were simply to require defendants to surrender their licenses at the time of sentencing in DUI convictions requiring license suspension. We urge that such a practice be adopted where it is feasible to do so.

appellant drove a motor vehicle, his operating privileges were under suspension because of a conviction for driving while under the influence of alcohol and that he had actual knowledge of such suspension.

Because of the mischief which is being caused in these cases by the decision in *Commonwealth v. Kane,* 460 Pa. 582, 333 A.2d 925 (1975), I would urge that the holding thereof might be reconsidered by the Supreme Court. If notice of suspension is sent, postage prepaid, to the motorist at his or her correct address, I can think of no good reason for holding that the well established inference of receipt thereof should not constitute prima facie evidence that notice of the suspension has been received.

CIRILLO, Judge, concurring and dissenting:

I agree with the majority to the extent that the holding in *Commonwealth v. Dietz,* 423 Pa.Super. 366, 621 A.2d 160 (1993) cannot be accepted; specifically, an appellant cannot be precluded from raising a lack of notice defense based on a failure to produce a valid driver's license at the time of a stop or within fifteen days thereafter. I cannot, however, countenance a result that places on a defendant the burden of producing evidence of his innocence, for he is protected by the presumption of that innocence. Thus, for the following reasons, I dissent. Crockford's conviction should not be permitted to stand.

During Crockford's trial, the only witness called by the Commonwealth was Trooper Robert Halecky. Trooper Halecky testified that on March 1, 1993, Crockford was stopped for an inspection sticker violation. At that time, Crockford was unable to provide a current driver's license upon request from Trooper Halecky. An examination of Crockford's driving record by the trooper revealed that Crockford's license had been suspended. Crockford denied knowledge of his suspension when he was so informed by Trooper Halecky and stated that he left his license at home in his wallet. It was further established at trial that notice of the suspension was mailed by the Pennsylvania Department of Transportation

(PennDOT) to Crockford on October 28, 1992; however, the Commonwealth could not verify to what address the notice was sent. Crockford did not produce a current license following the incident.

The Commonwealth rested its case at the conclusion of Trooper Halecky's testimony. Crockford then demurred, arguing that the Commonwealth failed to prove that he had actual notice of the license suspension. The Commonwealth averred that Crockford could not avail himself of the "no notice defense" because he had not produced a current license at the time of the offense or within fifteen days thereafter pursuant to 75 Pa.C.S.A. § 1511.

**§ 1511. Carrying and exhibiting driver's license on demand**

(a) **General rule.**—Every licensee shall possess a driver's license issued to the licensee at all times when driving a motor vehicle and shall exhibit the license upon demand by a police officer. . . .

(b) **Production to avoid penalty.**—No person shall be convicted of violating this section or section 1501(a) (relating to drivers required to be licensed) if the person produces at the office of the issuing authority or the arresting officer within 15 days a driver's license valid in this Commonwealth at the time of the arrest.

75 Pa.C.S.A. § 1511.[1] On the basis of *Commonwealth v. Dietz,* 423 Pa.Super. 366, 621 A.2d 160 (1993), discussed *infra,* the trial court denied the demurrer and convicted Crockford of driving with a suspended license, 75 Pa.C.S.A. § 1543(b).

Crockford filed post-verdict motions, arguing that he had no actual notice of his suspension prior to the incident. The

---

1. Crockford was not told by Trooper Halecky that he had fifteen days to produce a current license. Furthermore, when asked by the court to produce a current license during trial, Crockford responded that he was not instructed to bring the license. When the court pressed the matter, asking Crockford why he did not bring the license when he knew he was facing ninety days mandatory jail time, Crockford answered that he did not see the significance of producing the license, since he was now aware that it was not current. Crockford also repeated that, had he been so instructed, he would have brought the license.

motions were denied, and Crockford was sentenced to ninety days imprisonment. This appeal followed.

The following issues were raised for our consideration: (1) Whether the lack of actual notice of a license suspension is a defense to the offense of driving while operating privilege is suspended or revoked under 75 Pa.C.S.A. § 1543(b), and, if so, whether such a defense is waived when one fails to produce a current license pursuant to 75 Pa.C.S.A. § 1511?

(2) Whether, assuming the failure to produce a driver's license does not waive the defense of lack of notice, there was sufficient evidence presented to support Crockford's conviction under section 1543(b)? [2]

In examining a challenge to the sufficiency of the evidence, it is well settled that an appellate court must determine whether the evidence was sufficient to enable the jury to find every element of the crime charged beyond a reasonable doubt, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner. *Commonwealth v. Thomas*, 527 Pa. 511, 594 A.2d 300 (1991).

The statute in question, 75 Pa.C.S.A. 1543(b), provides in pertinent part:

**§ 1543. Driving while operating privilege is suspended or revoked**

\* \* \* \* \* \*

**(b) Certain offenses.**—Any person who drives a motor vehicle on any highway or traffic way of this Commonwealth at a time when their operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) or because of a violation of section 1547(b)(1) (relating to suspension of refusal) or 3731 shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days.

75 Pa.C.S.A. § 1543(b).

2. For purposes of clarity, I have taken the liberty of rewording Crockford's issues on appeal.

The Pennsylvania Supreme Court, in *Commonwealth v. Kane*, 460 Pa. 582, 333 A.2d 925 (1975), held that it must be proven, beyond a reasonable doubt, that the defendant had actual notice of the suspension of his operator's license in order to establish an essential element of the crime of driving with a suspended license. *Accord Commonwealth v. Zimmick*, 539 Pa. 548, 653 A.2d 1217 (1995); *Commonwealth v. Minor*, 436 Pa.Super. 35, 647 A.2d 229 (1994); *Commonwealth v. Heckman*, 404 Pa.Super. 335, 590 A.2d 1261 (1991); *Commonwealth v. Taylor*, 390 Pa.Super. 571, 568 A.2d 1320 (1990); *Commonwealth v. Gamble*, 376 Pa.Super. 590, 546 A.2d 681 (1988); *Commonwealth v. Horney*, 365 Pa.Super. 152, 529 A.2d 18 (1987); *Commonwealth v. Gray*, 356 Pa.Super. 299, 514 A.2d 621 (1986); *Commonwealth v. Burkett*, 300 Pa.Super. 72, 445 A.2d 1304 (1982). Additionally, *Kane* established that the Commonwealth may not satisfy the actual notice requirement by merely introducing evidence of the fact that the Department of Transportation sent a suspension notice to the defendant via first class mail. *Kane*, 460 Pa. at 586, 333 A.2d at 927.[3] *Accord Zimmick, supra,* 539 Pa. 556, 653 A.2d 221; *Minor, supra,* 436 Pa.Super. 35, 647 A.2d 229; *Heckman, supra,* 404 Pa.Super. 335, 590 A.2d 1261; *Taylor, supra,* 437 Pa.Super. 102, 649 A.2d 453; *Horney, supra,* at 365 Pa.Super. 152, 529 A.2d 18; *Gray, supra,* 356 Pa.Super. 299, 514 A.2d 621; *Burkett, supra,* 300 Pa.Super. 72, 445 A.2d 1304.

Subsequent to the *Kane* decision, several appellate decisions have clarified our Supreme Court's ruling by holding that when notice is mailed to the defendant and additional evidence exists to infer that the defendant received notice of suspension, then the evidence may be sufficient to prove actual notice. *See Zimmick, supra* (where appellant based his challenge of lack of actual notice solely on the alleged failure to obtain written notice from PennDOT, evidence was sufficient to demonstrate that appellant had actual notice where Commonwealth proved that: appellant pleaded guilty to the under-

---

3. In *Kane*, the notice of suspension was not sent to the address listed in PennDOT's records but rather, due to a typographical error, was mailed to an address at which the defendant never resided.

lying DUI offense, and at that time was informed that his license would be suspended; appellant was aware the he had not had a valid license for years; and, appellant asked the police officer not to cite him for a section 1543(b) violation because it would mean jail time for him); *Horney, supra,* 365 Pa.Super. 152, 529 A.2d 18 (actual notice proven when evidence established that notice was mailed and appellant admitted that he received prior notice, mailed to the same address, notifying him that he had to take an exam in order to keep his license, and he did not take the exam); *Gray, supra,* 356 Pa.Super. 299, 514 A.2d 621 (evidence was sufficient to prove actual notice where it was established that notice was mailed to appellant's correct address and appellant had previously surrendered his license in response to a notice mailed to the same address); *Burkett, supra,* 300 Pa.Super. 72, 445 A.2d 1304 (evidence that appellant had surrendered his license and attempted to conceal the fact that he was driving by removing himself from the driver's seat when his vehicle was pulled over by police was found probative of actual notice).

Notwithstanding the principles set forth thus far, the appellate courts of this Commonwealth have determined that a defendant cannot avail himself/herself of the defense of lack of actual notice under certain circumstances. Specifically, the question has arisen as to whether one who does not notify PennDOT of his or her change of address is precluded from asserting that the Commonwealth did not provide them with actual notice.[4] In *Commonwealth v. Heckman, supra,* 404 Pa.Super. 335, 590 A.2d 1261, a panel of this court enunciated the following rule: "[W]e today hold that when a defendant fails to notify PennDOT of a change in address pursuant to 75 Pa.C.S.A. § 1515, the defendant cannot rely on this violation of the law to insulate him from more serious violations by claiming lack of actual notice." *Heckman,* 404 Pa.Super. at 346, 590 A.2d at 1267. *See Minor, supra,* at 436 Pa.Super. 35, 647 A.2d 299 (applying *Heckman,* court held that appellant was precluded from presenting the defense that he lacked notice of suspension where he had not provided PennDOT

---

4. We have not been asked to rule upon this particular issue in the instant case. There was no evidence presented regarding the address to which PennDOT mailed Crockford's suspension notice.

with his current address).[5]  Most recently, this rule was validated by the Pennsylvania Supreme Court in *Commonwealth v. Zimmick, supra,* 539 Pa. 556, 653 A.2d 221.  There it was held that sufficient evidence existed to demonstrate that appellant had actual notice that his license was suspended and, additionally, that appellant was estopped from basing his lack of notice defense on PennDOT's failure to mail his notice to his current address since he failed to provide PennDOT with his correct address as required by 75 Pa.C.S.A. § 1515.  *See also Commonwealth v. McDonough,* 533 Pa. 283, 621 A.2d 569 (1993) (evenly divided decision).

In the instant case, the Commonwealth claims that, as a "logical extension" of the *Heckman* holding, a defendant seeking to invoke the defense of no notice must produce a current license at the time of the offense, or within fifteen days thereafter, pursuant to 75 Pa.C.S.A. § 1511.  The authority for the Commonwealth's argument is derived from a decision by a panel of this court in *Commonwealth v. Dietz,* 423 Pa.Super. 366, 621 A.2d 160 (1993).

In that case, appellant Dietz was convicted of driving with a suspended license pursuant to 75 Pa.C.S.A. § 1543(a).  Dietz was involved in an accident and fled the scene, leaving a trail of blood which led the police to his home.  When questioned by investigators, Dietz initially lied to them, denying that he was driving the car involved in the accident.  Additionally, Dietz's driving record revealed other convictions for driving with a suspended license.  Based on these facts, this court, adopting the reasoning of the trial court, logically held that the Commonwealth produced sufficient additional evidence that Dietz had actual notice of the suspension.

While the Commonwealth did not prove beyond a reasonable doubt that Mr. Dietz received actual notice through the

---

**5.**  This court in *Commonwealth v. Taylor,* 390 Pa.Super. 571, 568 A.2d 1320 (1990) held that the Commonwealth did not prove actual notice of a license suspension where there was evidence that the defendant no longer resided at the address to which his license was registered.  The decision, however, does not reveal whether the defendant notified PennDOT of his change of address pursuant to 75 Pa.C.S.A. § 1515.  *See also Commonwealth v. Gamble,* 376 Pa.Super. 590, 546 A.2d 681 (1988).

mail, the Commonwealth did present sufficient additional evidence to prove beyond a reasonable doubt the receipt of actual notice.... By fleeing the crash site and by misleading the investigators, Mr. Dietz demonstrated that he knew he was not permitted to drive. Secondly, Dietz's driving record shows three driving under suspension ... convictions and one driving without a valid license conviction....

*Dietz,* 423 Pa.Super. at 368, 621 A.2d at 162. Additionally, and more relevant to the instant case, the court extended its holding to include the following:

**Furthermore, we hold that in order for a person to invoke the defense that there was no notice of the suspension or revocation of the license, at a minimum, it must be established at trial, that a current driver's license was produced at the time of the offense, or within 15 days thereafter, as provided for in 75 Pa.C.S.A. [§] 1511.** When the penalties of 75 Pa.C.S.A. [§] 1532 have been applied, resulting in suspension or revocation of a driver's license, under 75 Pa.C.S.A. [§] 1540, the driver is required to surrender the license. The operating privileges cannot then be restored until expiration of the suspension/revocation period at which time one must reapply for a new driver's license. 75 Pa.C.S.A. [§] 1541. **Therefore, it is logical to require of a driver who claims that no notice of a suspension was received, to at least prove possession of a current license at the time of the incident. Otherwise, a defendant's failure to possess a current license is presumptive knowledge of suspension.**

*Id.* at 370–371, 621 A.2d at 162–63 (emphasis added).

It is a basic tenant of our law that, in criminal cases, there is a continuing presumption of innocence. *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959).

[The] presumption of innocence ... represents the law's humane approach to the solution of a dispute which may result in the loss of life or liberty. Because of this concern the law has ordained that any government which seeks to take from any person his life or liberty has the burden of proving justification for doing so. It is the continuing

presumption of innocence which is the basis for the requirement that the state has a never-shifting burden to prove guilt beyond a reasonable doubt.

*Id.* at 229, 151 A.2d at 445. *See Commonwealth v. Hilbert,* 476 Pa. 288, 297, 382 A.2d 724, 729 (1978) ("[A] state carries a never-shifting burden of proof beyond a reasonable doubt of all the elements of a crime, such elements being contained in either statutory or common-law definitions."); *Turner v. Commonwealth,* 86 Pa. 54, 74 (1878) (the burden of proof never shifts but rests with the prosecution throughout); *Commonwealth v. Wagaman,* 426 Pa.Super. 396, 401, 627 A.2d 735, 737 (1993) (same). *See also Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In light of the Commonwealth's burden to persuade the jury of a defendant's guilt, the defendant is not required to present any evidence in order to prevail. *Commonwealth v. Loccisano,* 243 Pa.Super. 522, 535–537, 366 A.2d 276, 283 (1976). "A man charged with a crime is not required to explain anything. It is the Commonwealth's obligation to prove guilt." *Commonwealth v. Clinton,* 391 Pa. 212, 216, 137 A.2d 463, 465 (1958). "It is hornbook law that a person charged with a crime is under no duty to ... produce evidence of his innocence but may stand mute protected by the presumption of innocence and demand that the Commonwealth sustain its burden of proving his guilt beyond a reasonable doubt." *Commonwealth v. Jacobs,* 247 Pa.Super. 373, 379, 372 A.2d 873, 876 (1977). "The Due Process Clause of the United States Constitution prohibits placing a burden of proof upon a criminal defendant to negate an element of the crime with which he or she is charged." *Hilbert,* 476 Pa. at 294, 382 A.2d at 727 (citing *Mullaney, supra,* 421 U.S. 684, 95 S.Ct. 1881). There can be no burden on an accused to disprove an element of the offense. *Loccisano,* 243 Pa.Super. at 537–539, 366 A.2d at 284. Furthermore, "[t]he due process burden of proof applies to summary offenses as well as to other criminal

charges." *Wagaman*, 426 Pa.Super. at 401, 627 A.2d at 737 (citing *Commonwealth v. Karl*, 340 Pa.Super. 493, 490 A.2d 887 (1985)).

Here, the Commonwealth, by way of the rationale espoused in *Dietz*, essentially takes the position that the burden should be placed on defendant/appellant Crockford to negate an essential element of the offense of driving with a suspended license, namely, actual notice of the suspension. Crockford's failure to establish at trial that a current driver's license was produced at the time of the offense or within fifteen days thereafter, as provided in 75 Pa.C.S.A. § 1511, is, the Commonwealth contends, presumptive knowledge of suspension; it avers that only *after* a current license is produced should the prosecution be required to prove actual notice of the suspension through additional evidence.[6] Such a result shall not be

6. The Commonwealth contends that this approach would mirror the approach adopted by the Pennsylvania Supreme Court in *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529 (1994). There, the Court found it unnecessary to require the Commonwealth to present expert testimony in cases where the driver has failed to rebut the Commonwealth's *prima facie* evidence that his blood alcohol content was 0.10% while operating a motor vehicle. By analogy, the Commonwealth would apply the procedural framework set forth in *Yarger* to the instant case. Specifically, the Commonwealth's brief suggests the following:

[T]he Commonwealth would maintain the initial burden of establishing that the defendant's driver's license was suspended and that notice of the suspension was mailed to the defendant. Following such evidence, a *prima facie* case would be established. At this point, evidence that the defendant produced a valid driver's license could be introduced by the defendant to rebut the Commonwealth's *prima facie* evidence. If evidence rebutting the Commonwealth's *prima facie* case was produced, then the Commonwealth would bear the additional burden of proving actual notice of suspension through additional evidence.

I reject this analogy, as these two statutes can be clearly distinguished. Section 3731(a)(4) of the Vehicle Code, at issue in *Yarger*, requires as a statutory element of the offense that the Commonwealth prove a 0.10% blood alcohol content as part of its *prima facie* case. The 0.10% rule, built into the statute itself, specifies a quantum of evidence which is legally sufficient to sustain proof of this element of the crime. *See Commonwealth v. Hernandez*, 339 Pa.Super. 32, 488 A.2d 293 (1985). Section 1543, as interpreted by the Commonwealth through *Dietz*, would essentially bring the requirements of another statute (section 1511) through the "back door," thereby impeding a defendant's right to notice and seeking an application of sections 1511 and 1543 that the legislature did not envision. I decline to accept the Commonwealth's invitation to follow the procedural approach set forth

tolerated. To place such a burden on a defendant of having to affirmatively prove compliance with section 1511, or be deemed to have had notice of suspension, runs afoul of the constitutional due process requirement that the government, with its never-shifting burden, must prove every element necessary to constitute the crime beyond a reasonable doubt. *Bonomo, supra,* 396 Pa. 222, 151 A.2d 441.

In essence, under the Commonwealth's view, since Crockford did not put forth any evidence that he was in possession of a current license pursuant to section 1511 he was, in effect, deemed to have forfeited his right to assert a lack of actual notice under section 1543. The right to actual notice required by *Kane, supra,* 460 Pa. 582, 333 A.2d 925, is grounded in the constitutional right to due process of law. *Kane,* 460 Pa. at 585, 333 A.2d at 926 (citing *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969)). Under *Dietz,* Crockford's failure to exhibit a valid/current driver's license as evidence of actual notice would essentially subject him to a loss of liberty; proof of actual notice is not an element that can be essentially "waived" by an accused's inaction, rather, it must be affirmatively proven by the Commonwealth. *See Zimmick, supra,* 539 Pa. 556, 653 A.2d 221 (Justice Zappala, concurring) (since the violation of section 1543(a) could result in imprisonment, definitely a loss of liberty, due process requires actual notice of suspension as an element of the offense); *see also Commonwealth v. McDonough,* 533 Pa. 283, 621 A.2d 569 (1993) (Justice Flaherty, opinion in support of reversal).

I am mindful of the potential difficulty facing prosecutors in their efforts to obtain convictions in these matters. A prosecutor who proves that a license has been suspended and notice has been mailed, may find it challenging to present the additional evidence necessary to prove the element of actual notice. These concerns, however, can never overshadow a defendant's constitutionally protected presumption of innocence, the Commonwealth's never-shifting burden of proving guilt beyond a reasonable doubt, and a defendant's constitu-

in *Yarger* and apply it to a section 1543 case. The framework set up in *Yarger* does not result in hindering a defendant's fundamental right to notice, as it would here.

tional right to due process via the notice requirements. Therefore, to the extent that the *Dietz* decision places an affirmative duty on a defendant to produce a current driver's license before asserting a defense of no notice, I would reject the imposition of such a requirement.

Since Crockford cannot be obligated to establish that he was in possession of a valid driver's license, I find that the Commonwealth did not sustain its burden of proving actual notice of the license suspension, an essential element under section 1543. *Kane, supra,* 460 Pa. 582, 333 A.2d 925. Because proof of mailing is not sufficient, in and of itself, to prove that Crockford had notice that his license was suspended, *Kane, supra,* and, since the Commonwealth presented no additional evidence of actual notice, *Burkett, supra,* 300 Pa.Super. 72, 445 A.2d 1304, his conviction must be reversed.[7] *Thomas, supra,* 527 Pa. 511, 594 A.2d 300.

---

7. I reject the Commonwealth's contention that actual notice of suspension in prosecutions under section 1543 should no longer be an element of the offense of driving with a suspended/revoked license. Specifically, the Commonwealth points out that *Kane* was decided pursuant to the Act of April 29, 1959, P.L. 58 § 624, as amended, 75 P.S. § 624. Since an offense under section 624 was a misdemeanor, the general requirements of culpability applied. Section 624 was repealed, and now 75 Pa.C.S.A. § 1543 establishes two separate summary offenses for driving with a suspended/revoked license. The Commonwealth contends that since violations of section 1543 are always summary offenses, there is no mens rea requirement that the Commonwealth must prove. *See* 18 Pa.C.S.A. § 305(a)(1) and (2). Since the 75 Pa.C.S.A. § 1543 statutory scheme has replaced that found in section 624, the Commonwealth avers that *Kane* and its progeny no longer has a valid statutory base. In other words, since the Commonwealth need not prove that a defendant was knowingly driving with a suspended license, it need not prove actual notice.

I reiterate what this court stated in *Commonwealth v. Heckman,* 404 Pa.Super. 335, 590 A.2d 1261 (1991), where a similar argument was rejected. There, we stated: "While we agree that § 1543(b) does not include a culpability requirement in its definition, we cannot agree that such a requirement is 'patently inconsistent' with effective enforcement of driving under suspension.... [W]e do not hold that actual notice of suspension is no longer necessary." *Id.* at 347 n. 6, 590 A.2d at 1267 n. 6. I would decline the Commonwealth's request to reexamine and reevaluate this area of the law.