J-S56035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OSVALDO GARCIA CUBILETE | : | |
| | : | |
| Appellant | : | No. 1248 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 4, 2020
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0002560-2019

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED:  DECEMBER 31, 2020**

The Lehigh County Court of Common Pleas (trial court) found Osvaldo Garcia Cubilete (Cubilete) guilty of driving under the influence (DUI) of a Schedule I controlled substance (75 Pa.C.S. § 3802(d)(1)(i)); possession of a small amount of marijuana (35 P.S. § 780-113(a)(31)(i)); driving with a suspended license (75 Pa.C.S. § 1543(a)); and driving with improper rear lighting equipment (75 Pa.C.S. § 4303(b)).[1]

Cubilete appeals the trial court's judgment of sentence challenging the sufficiency of the evidence on the suspended license count and the application

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] He was acquitted of one count of driving under the influence – impaired ability (75 Pa.C.S. § 3802(d)(2)).

of a sentence enhancement on the DUI count. He further maintains that the trial court erred in denying his motion to suppress the results of a blood test, asserting that his consent to the testing was involuntary. For the reasons that follow, we vacate the conviction of driving with a suspended license and remand the case as to the DUI count for a resentencing. The judgment of sentence is otherwise affirmed.

**I.**

In the early morning hours of March 14, 2019, patrol officers pulled Cubilete over due to inoperable rear lights on his vehicle. During the stop, the officer smelled the odor of marijuana coming from inside Cubilete's vehicle and his person. Cubilete, then aged 22, admitted that he had ingested marijuana three to four hours earlier and that he was in possession of a small amount of the substance. After running Cubilete's plates, the police learned that there was an outstanding warrant for his arrest and that his driver's license had been suspended.

The officers reported that Cubilete appeared to have glassy, bloodshot eyes, and that his overall demeanor suggested some level of impairment from a controlled substance. The officers noted that Cubilete seemed "nervous" but they also described him as fully cooperative and forthright at all times.

Cubilete was arrested and transported to a nearby police department, where he was given a series of field sobriety tests. These exercises were not

performed to the officers' satisfaction so they sought to do further testing to gauge whether Cubilete was impaired.

At a booking center, Cubilete was presented with an "Implied Consent Form" authorizing a blood draw. Lehigh County's version of the form reads:

> According to the provisions of section 1547 of the Vehicle Code of the Commonwealth of Pennsylvania which deals with implied consent, any person who drives, or is in actual physical control of the movement of a vehicle in the Commonwealth, and who is placed under arrest for driving under the influence of alcohol and/or a controlled substance, is required to submit to one or more chemical tests of their blood for the purpose of determining the alcohol/controlled substance concentration, if they are requested to do so by a police officer.
>
> If you refuse to submit to a blood test when requested, notification will be sent to the department of transportation, and your operating privileges will be suspended for a period of at least one year.
>
> Any warnings previously given to you concerning your right to remain silent and your right to consult with an attorney do not apply to the taking of this chemical testing, and do not give you the right to refuse this test. You have no legal right to consult with an attorney, physician, or anyone else, nor have anyone present for the purpose of this testing. Any request to speak with an attorney or anyone else after being provided with these warnings will constitute a refusal.
>
> A refusal to submit to chemical testing will result in a suspension of your operating privilege, and you will be subject to a license restoration fee of up to $2000.00.
>
> With this in mind, I am asking you to submit to a blood test to determine your alcohol/controlled substance concentration. Will you submit to this test, providing adequate samples of blood as requested?
>
> 1. I have been advised that I have been arrested for driving under the influence of alcohol and/or a controlled substance.

2. I have been requested to submit to a blood test to determine my alcohol/controlled substance concentration.

3. I have been advised that if I refuse to provide blood sample(s) as requested, my operating privileges will be suspended for a period of at least one year.

4. I have been advised that my right to remain silent and to consult with an attorney do not apply to the taking of the blood sample.

Commonwealth's Trial Exhibit C-4.

Cubilete was given the chance to read the form himself before it was read to him by the police. After telling the officers that he understood it and had no questions, he then signed the form. His blood was drawn and lab testing revealed it to contain trace amounts of tetrahydrocannabinol (thc) and marijuana metabolites.

Cubilete moved to suppress the blood test results from the evidence at trial, arguing that the blood draw was involuntary, making the testing the fruit of an illegal search. In his motion, Cubilete asserted that the language in the implied consent form given to him by the police had misled him into believing he had no right to refuse blood testing. Finding that there were no unduly coercive circumstances that could have rendered Cubilete's consent involuntary, the trial court denied the motion.

At the following bench trial, one of the central factual disputes was whether Cubilete had notice that his driving privileges had been suspended – a necessary element of the offense of driving with a suspended license. To prove that Cubilete had notice of the suspension at the time he was stopped,

the Commonwealth introduced into evidence a certified copy of Cubilete's driver history taken from PennDOT's[2] information system.

This document was produced on October 30, 2019, months after the events in question occurred, but it reflected that notice of a license suspension had been mailed on June 21, 2018. This suspension period was "3 month(s) effective Jul[y] 26, 2018." *See* Commonwealth's Trial Exhibit C-3. Cubilete's driving privileges were not restored until August 20, 2019, months after the subject traffic stop took place.[3] There is no indication on the document that the notice was returned as undeliverable. *See id*.

At the conclusion of the trial, Cubilete was found guilty of the offenses enumerated above. As to the DUI count, he was sentenced to 48 months of intermediate punishment (house arrest), with 135 days of electronic monitoring, and this term exceeded the maximum sentence for a first-time DUI offender. Cubilete had no prior convictions for DUI, but he was sentenced

_____

[2] The Pennsylvania Department of Transportation.

[3] Even though the suspension period elapsed three months after it went into effect, Cubilete could be found guilty of driving with a suspended license beyond that period by operating a motor vehicle before his driving privileges had been restored. *See* 75 Pa.C.S. § 1543(a).

as a second-time offender because of his acceptance of Accelerated Rehabilitated Disposition (ARD)[4] in an earlier DUI case.[5]

It should be noted that the trial court imposed sentence on the DUI count with reluctance, having described the amount of marijuana in Cubilete's system as "not that much" and too little to have impaired his ability to drive. *See* Trial Transcript, 3/4/2020, at pp. 90-92. Yet the trial court reasoned that since the DUI statute criminalizes even trace amounts of marijuana or its metabolites in a motorist's system, Cubilete's blood test had proven his guilt beyond a reasonable doubt. *See id*.

Cubilete timely filed a post-sentence motion on March 6, 2020, and then an amended version on May 22, 2020. The amended motion was denied by the trial court in an order and written opinion. *See* Order and Opinion, 5/22/2020. Cubilete filed a timely appeal and both Cubilete and the trial court complied with Pa.R.A.P. 1925. In his brief, Cubilete now raises three issues for our consideration:

_____

[4] ARD is a pretrial disposition that is not equivalent to a criminal conviction. *See generally Commonwealth v. Lutz*, 495 A.2d 928, 931-32 (Pa. 1985); 75 Pa.C.S. § 1552. The purpose of ARD is to allow a defendant to complete a rehabilitation program in exchange for the dismissal of pending charges. *See id*.

[5] The maximum sentence for a first-time DUI offender is six months. *See* 42 75 Pa.C.S. § 3803(b)(2); Pa.C.S. § 9754(a) (the maximum length of a probationary sentence may not exceed the maximum prison term for a given offense).

**i**. Did the trial court err by not suppressing the warrantless, nonconsensual blood draw obtained in violation of Mr. Cubilete's rights under the Fourth and Fourteenth Amendments of the United States Constitution; Article I, Section 8 of the Pennsylvania Constitution; and/or 75 Pa.C.S. § 1547?

**ii**. Was the evidence adduced at trial insufficient to prove beyond a reasonable doubt that Mr. Cubilete had actual notice of his license suspension and, therefore, was insufficient to sustain his conviction for [d]riving while operating privilege is suspended or revoked, in violation of 75 Pa.C.S. § 1543(a)?

**iii**. Did the trial court err in enhancing Mr. Cubilete's sentence in Count 1, driving under the influence of alcohol or a controlled substance (Controlled substances, Schedule I), based on his prior acceptance of Accelerated Rehabilitative Disposition ("ARD"), in violation of Mr. Cubilete's rights under the Due Process Clause?

Cubilete's Brief at 6 (questions renumbered, answers omitted).

## II.

Cubilete's first ground on appeal is that the police illegally searched him by coercing his consent to a blood draw, making the blood test inadmissible and requiring a new trial on the DUI count to remedy the violation. His central challenge is that his consent was involuntary because Lehigh County's Implied Consent Form (the Form) misadvised him that he was "required" to submit to testing, suggesting that had no right to refuse. The Commonwealth responds that Cubilete's consent was valid because the Form made refusal and avoidance of blood testing a clear option.

On review,[6] we find that the trial court did not err in denying Cubilete's suppression motion because, when taken as a whole, the Form reasonably conveyed that testing could be refused and thereby avoided.

**A.**

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit warrantless searches unless it can be shown that a recognized exception applies, including voluntary consent to the search. ***See Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000). In Pennsylvania, blood draws are considered to be searches, and all motorists are deemed to have consented to them under certain conditions. ***See*** 75 Pa.C.S. § 1547(a); ***Commonwealth v. Kohl***, 615 A.2d 308, 315 (Pa. 1992).[7]

_____

[6] The "standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Krenzel***, 209 A.3d 1024, 1027 (Pa. Super. 2019) (quoting ***Commonwealth v. Shreffler***, 201 A.3d 757, 763 (Pa. Super. 2018)).

[7] The implied consent statute provides as follows:

> General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of

To justify a demand for a blood draw, an officer must have "reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle" while committing an enumerated offense, including driving with a suspended license and driving while under the influence of a controlled substance. 75 Pa.C.S. § 1547(a).

Although a motorist's consent to the requested testing is presumed, the "testing shall not be conducted" if implied consent is expressly withdrawn:

> **If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted** but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]

*Id*. at § 1547(b)(1) (emphasis added).

The Commonwealth has the burden of proving that consent to a blood draw has been voluntarily given. ***Commonwealth v. Smith***, 77 A.3d 562, 573 (Pa. 2013). Implied consent, which exists by operation of law, is not equivalent to proof of voluntary consent. Before a motorist's consent to a blood draw can be knowing and voluntary, the police must inform him of his above-mentioned right to refuse testing, and that a refusal results in

---

section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa.C.S. § 1547(a).

penalties. ***See*** 75 Pa.C.S. § 1547(b.1)(2) (imposing on police the duty to inform a detained motorist that they may refuse testing and the penalties for refusal); ***see also Commonwealth v. Myers***, 164 A.3d 1162, 1181-82 (Pa. 2017) (holding that blood draw from an unconscious motorist was involuntary because police never gave him the chance to exercise his right to refuse).

When evaluating the validity of consent, courts apply an objective standard of what a reasonable person would have understood from an exchange with police, rejecting any subjective understanding a defendant may have had. ***See Commonwealth v. Krenzel***, 209 A.3d 1024, 1028-29 (Pa. Super. 2019) (quoting ***Commonwealth v. Venable***, 200 A.3d 490, 495 (Pa. Super. 2018)). A non-exhaustive list of relevant factors for the voluntariness of consent includes:

> 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Commonwealth v. Gillespie***, 821 A.2d 1221, 1225 (Pa. 2003) (quoting ***Commonwealth v. Cleckley***, 738 A. 2d 427, 433 n.7 (Pa. 1999)).

## B.

Here, no factors signaling involuntary consent are evident in the record. A motorist must submit to testing when an officer suspects their impairment and requests their compliance with the law. ***See*** 75 Pa.C.S. § 1547(a). It is

up to the motorist whether to comply with the testing or face the consequences. In this respect, the implied consent statute is like any other law that presents the choice of compliance on the one hand and sanction for non-compliance on the other. These penalties for refusal of a mandated action indeed make blood testing "required" just as the Form states.[8]

The Form could only have been misleading, as Cubilete argues, if it did not communicate to him that refusal was a possibility. It did, so it was not. The Form provides that a person arrested on suspicion of DUI "is required to submit" to testing "if they are requested to do so by a police officer." *See* Commonwealth's Trial Exhibit C-4. While the Form lacks the statute's pronouncement that when testing is refused, no testing shall be conducted, this did not deprive Cubilete of the ability to make an informed decision.

Repeatedly and in compliance with Section 1547, the Form refers to the right to refuse testing and the penalties for refusing it. Cubilete's contention that the Form frames blood testing as absolutely mandatory is undermined by these numerous occasions in which the Form makes "refusal" of the "request" a viable alternative to blood testing:

_____

[8] Consistent with our interpretation of the language in the Form and Section 1547, Black's Law Dictionary defines a "requirement" primarily as "1. Something that must be done because of a law or rule; something legally imposed, called for, or demanded; an imperative command. 2. Something that someone needs or asks for[.]" REQUIREMENT, Black's Law Dictionary (11th Ed. 2019).

> **If you refuse** to submit to a blood test when **requested**, notification will be sent to the Department of Transportation, and your operating privileges will be suspended for a period of at least one year.
>
> * * * *
>
> **A refusal to submit to chemical testing** will result in a suspension of your operating privilege, and you will be subject to a license restoration fee of up to $2000.00.
>
> With this in mind, **I am asking you to submit** to a blood test to determine your alcohol/controlled substance concentration.  Will you submit to this test, providing adequate samples of blood as requested?
>
> 1. I have been advised that I have been arrested for driving under the influence of alcohol and/or a controlled substance.
>
> 2. **I have been requested** to submit to a blood test to determine my alcohol/controlled substance concentration.
>
> 3. I have been advised that **if I refuse** to provide blood sample(s) **as requested**, my operating privileges will be suspended for a period of at least one year.
>
> 4. I have been advised that my right to remain silent and to consult with an attorney do not apply to the taking of the blood sample.

*Id*. (emphases added).

Accordingly, the Form sufficiently conveys the right of refusal in a way that is not coercive or misleading.  By informing Cubilete of his rights through verbatim recitation of the Form, the police abided by their duty to advise him that he could refuse to be tested, along with what refusal would entail. Nothing about the arresting officers' conduct toward Cubilete was threatening

or coercive beyond the necessary conditions incident to any lawful arrest. The trial court's denial of Cubilete's suppression motion is affirmed.[9]

## III.

Cubilete next contends that his conviction for driving with a suspended license cannot stand because the Commonwealth's evidence of actual notice of the suspension was legally insufficient.[10] We find merit in this claim.

## A.

The Commonwealth has the burden of proving this offense by showing that the defendant drove a motor vehicle on a public road while his operating privileges were suspended or suspended and then not yet restored. **See** 75 Pa.C.S. § 1543(a). Moreover, in **Commonwealth v. Kane**, 333 A.2d 925,

---

[9] Cubilete's sub-argument is that the Form is misleading because it confuses the right to refuse testing with the separate warning that requesting counsel is considered a refusal. **See Commonwealth Dept. of Transportation v. O'Connell**, 555 A.2d 873, 878 (Pa. 1989). The Form states, "Any warnings previously given to you concerning your right to remain silent and your right to consult with an attorney do not apply to the taking of this chemical testing, and do not give you the right to refuse this test." We decline to find this language misleading or coercive because it is an accurate description of a motorist's obligations under 75 Pa.C.S. § 1547. The right to counsel and the freedom from self-incrimination do not nullify a motorist's implied consent to a blood draw or allow a motorist to avoid the penalties for refusal.

[10] We review the sufficiency of the evidence under a *de novo* standard, viewing the evidence admitted at trial in the light most favorable to the verdict winner. **See Commonwealth v. Harden**, 103 A.3d 107, 111 (Pa. Super. 2014). The Commonwealth may carry its burden of proving each element of a crime beyond a reasonable doubt by wholly circumstantial evidence, and on appeal, all reasonable inferences drawn from the evidence must be made in favor of the verdict winner. **See id**.

927 (Pa. 1975), our Supreme Court added the element of actual notice of the suspension at the time of the vehicle's improper operation. **See also Commonwealth v. Crockford**, 660 A.2d 1326, 1329 (Pa. Super. 1995) (explaining that actual notice is "a judicially created element, designed to protect a defendant's due process rights.").

"Notice is a question of fact, and anything that proves knowledge or is legal evidence showing knowledge exists can be sufficient." **Crockford**, 660 A.2d at 1330. However, simply proving that notice was mailed is *not alone* sufficient to prove that it was ever received. **See Kane**, 333 A.2d, at 927. "Mailed letters do go astray for a variety of reasons. Criminal conviction requires proof beyond a reasonable doubt and that standard is not satisfied when one of the elements which must be proven is actual notice, and the only evidence presented is that a notice was mailed." **Id**.

In addition to evidence that notice of suspension was posted, a factfinder's conclusion that a defendant had actual notice must depend on some other factor, including, but not limited to:

> evidence that the defendant was verbally or in writing apprised of the license suspension during the trial or a plea, statements by the accused indicating knowledge that he or she was driving during the period in which his or her license had been suspended, evidence that PennDOT sent by mail the notice of the suspension to appellant's current address, evidence that PennDOT's notice of suspension was not returned as undeliverable, attempts by the accused to avoid detection or a citation, and any other conduct demonstrating circumstantially or directly appellant's knowledge of the suspension or awareness of guilt.

***Commonwealth v. Zimmick***, 653 A.2d 1217, 1221 (Pa. 1995).[11]

**B.**

In this case, the Commonwealth sought to prove the actual notice element of driving with a suspended license by introducing a certified driver history reflecting that notice was mailed.  As held in ***Kane***, some additional evidence of the element was needed to sustain a conviction for that offense.

The Commonwealth attempted to carry that burden of proof in two ways.  First, the Commonwealth argued that the trial court could infer that Cubilete's apparent nervousness during the traffic stop was caused by his knowledge of the suspension.  Second, the Commonwealth argued that the trial court could infer that the mailed notice arrived because the certified driver history did not reflect that it was returned to PennDOT as undeliverable.  The trial court erred as a matter of law in drawing both of those inferences.

**1.**

Under the circumstances of his detention, Cubilete seeming nervous had no bearing on whether he had knowledge that his license was suspended.  The

---

[11] In ***Commonwealth v. Crockford***, 660 A.2d 1326 (Pa. Super. 1995), we held that in order for a defendant to avail himself of the right to challenge the sufficiency of a mailed notice of a license suspension, he must have presented his driver's license to the police within 15 days of the initial traffic stop.  By doing so, the defendant has offered proof that his license had not been suspended.  Here, Cubilete presented his license to the officer who stopped him, thereby shifting the burden to the Commonwealth of introducing some additional evidence of actual notice.

arresting officers described Cubilete as being fully cooperative throughout their encounter, and after turning over his driver's license, he admitted to the officers that he had possessed and ingested marijuana. He did not admit to or discuss a license suspension.

Importantly, the officers also testified that it was normal for a motorist to get nervous when stopped by police even for minor traffic violations, which would include the initial basis for Cubilete's stop – improper rear lighting on his vehicle. *See* Trial Transcript, 3/4/2020, at p. 29. When they nevertheless cited Cubilete's nervousness as grounds for their suspicion, it concerned a possible DUI, not a license suspension. *See id*. at p. 19.

In this situation, there is no logical connection between Cubilete's observed conduct and his knowledge of his driving status. A natural reaction to (a) being pulled over by police for a traffic violation, (b) admitting to using and possessing a controlled substance, (c) and facing imminent arrest by the police, is not proof of an additional, unrelated offense of driving with a suspended license.[12]

_____

[12] Generally, evidence is only relevant as to a "fact of consequence" if it "has any tendency to make [the] fact more or less probable than it would be without the evidence." Pa.R.E. 401(a). Appearing nervous during a traffic stop and while confessing to controlled substance offense to police does not have any tendency to make it more probable than not that Cubilete knew his license was suspended. Thus, his evident nervousness was not evidence of actual notice of the suspension.

Cubilete never indicated by his conduct or his words that he knew of the suspension, and even the arresting officers did not testify to that effect. Inferring an awareness of a suspended license was speculative, and the trial court, therefore, erred in ruling that Cubilete's nervous demeanor was relevant in consideration of the actual notice element. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa. Super. 2002) ("A police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a "hunch," employing speculation about the citizen's motive in the place of fact.").

**2.**

Cubilete's actual notice of a license suspension is also not proven by the fact that his driver history lacked a notation indicating that the suspension notice was undeliverable. For non-delivery of the suspension notice to raise an inference that it arrived at Cubilete's residence, it would need to be known that PennDOT sent the notice to that location. *See Kane*, 333 A.2d at 927 (holding that mailed notice alone does not prove actual notice of a suspension). We have no such evidence before us.

The driving history only provides that notice was mailed on June 21, 2018.[13] Accordingly, the Commonwealth proved, at most, that PennDOT

_____

[13] The address attributed to Cubilete on the certified driver history is 5325 Main Street, Whitehall, PA 18052. *See* Commonwealth's Trial Exhibit C-3. The toxicology report created days after Cubilete's arrest, on March 17, 2019,

posted a suspension notice to an unidentified location and never had it returned back. Because the record contains no additional evidence that it was sent, much less delivered, to where Cubilete lived at the time of mailing, our Supreme Court's decision in **Kane** compels us to vacate Cubilete's conviction of driving with a suspended license.

## IV.

With respect to the enhancement claim, we remand the case for resentencing. As the Commonwealth has conceded in its brief, **see** Commonwealth's Brief, at 17, our recent opinion in **Commonwealth v. Chichkin**, 232 A.3d 959, 971-72 (Pa. Super. 2020), prohibits enhancement of a sentence for DUI based solely on a motorist's earlier acceptance of an ARD. Accordingly, Cubilete must be resentenced as to that conviction as a first-time DUI offender. With the exception of the driving with a suspended license count, which is vacated, Cubilete's convictions are affirmed.

Order reversed in part and affirmed in part. Case remanded for further proceedings consisting with this memorandum. Jurisdiction relinquished.

_____

states that his address at that point was 1253 Olympic Circle South, Whitehall, PA 13052. **See** Commonwealth's Trial Exhibit C-1. The driver history does not identify either of those addresses or any other address as the destination of the suspension notice PennDOT sent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/20